



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHARLES R. BEMBRY and MICHAEL POOLE

        Plaintiffs,

- against -

NEW YORK METRO AREA POSTAL UNION,
AMERICAN POSTAL UNION, AFL-CIO,
CLARICE TORRENCE,

        Defendants
-----------------------------------------------------------x

**COMPLAINT**

**DOCKET NO.**

**JURY TRIAL DEMANDED**



Plaintiffs, Charles R. Bembry ("Bembry") and Michael Poole ("Poole") by their attorney, Robert N. Felix, Esq., for their Complaint against Defendants allege as follows:

### INTRODUCTION AND SUMMARY OF ACTION

1. This civil action arises pursuant to Section 201(c) of the Labor-Management Reporting and Disclosure Act of 1959, as amended, ("LMRDA") 29 U.S.C. § 431(c), and involves a dispute over access by plaintiffs to financial books, records and accounts of defendants, New York Metro Area Postal Union, American Postal Workers Union, AFL-CIO, (the "Union" or "NY Metro") and Clarice Torrence, ("Torrence"), an officer and President of the Union, and seeks to enforce a duty imposed by law upon defendants.

2. Plaintiffs, union members and elected officers of NY Metro, seek access to certain records and a permanent injunction against NY Metro, preventing it, and its officers, from refusing to furnish plaintiffs with the information they seek in this action.

3. Pursuant to section 201(b) of the LMRDA, every labor organization must file an annual LM-2 Report with the Secretary of Labor. This Report must

1

      disclose the organization's financial condition and operations for the preceding year, detailing the union's assets, liabilities, and disbursements. 29 U.S.C. § 431(b).

4. Plaintiffs request that defendants be ordered to allow them to make copies, at the union's expense, of all appropriate information they seek, which includes financial records of NY Metro which were used in completing its last LM-2 Report and other related information or documents.

5. Section 201(c), LMRDA, is intended to insure that the information that unions report in its LM-2 Labor Organization Annual Report to the United States Department of Labor is verifiable and that such information, along with the ability to examine books, records and accounts are open to union members upon a showing of just cause.

6. Specifically, section 201(c), LMRDA provides in pertinent part that "[e]very labor organization required to submit a report . . . shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report. The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

7. By this suit, plaintiffs who are members and officers of NY Metro seek to enforce the duty imposed by law upon defendants NY Metro and Clarice Torrence, ("Torrence"), an officer and President of the Union, to permit

        plaintiffs, who have just cause, to examine relevant books, records, and accounts necessary to verify the Union's last LM-2 Report and seek all remedies provided by law, including reasonable attorney's fees and costs.

8. Plaintiffs allege that they have requested pertinent information, which is detailed below, and defendants have unreasonably and unlawfully failed to provide the information requested.

## JURISDICTION AND VENUE

9. Jurisdiction and venue is conferred on this Court pursuant to 28 U.S.C. § 1331 and §201(c) of the LMRDA (29 U.S.C. § 431(c)).

## PARTIES

10. Plaintiff Bembry is a citizen of the United States and a resident of the State of New Jersey. Bembry is a member in good standing of NY Metro and holds the elective officer position of Executive Secretary, NY Metro.

11. Plaintiff Poole is a citizen of the United States and a resident of the State of New York. Poole is a member in good standing of NY Metro and holds the elective officer position of Coordinating Vice President, NY Metro.

12. Defendant NY Metro is a labor union, and is an affiliated Local of the American Postal Union, AFL-CIO.

13. Defendant NY Metro's principle place of business is 350 West 31st Street, New York, New York 10001

14. Defendant Torrence is the elected President of NY Metro and is responsible for the daily operations of the Union and *inter alia* is required to "countersign all checks drawn on the union, examine all contracts to which the Union and sign all contracts and other obligations of the Union" as set forth in NY Metro Constitution, Article 7, Section 2.

15. As set forth in NY Metro Constitution, Article 7, Section 2, the President is "responsible for the effective enforcement of the provisions of [the]

3

Constitution and By-Laws and for ensuring that the rights of the members as individuals and as a group . . . are duly protected and enforced."

## STATEMENT OF FACTS

16. On or about June 28, 2007, defendants filed the LM-2 covering the period April 1, 2006 through March 31, 2007.

17. By letter dated August 21, 2007, plaintiffs sought from defendant Torrence, various documents for review, including (a) vouchers from 12 individuals; (b) a detailed record of services rendered by a consultant; (c) a breakdown of all contributions, gifts and grants totaling $28,139 as indicated in the most recent LM-2; (d) a breakdown with explanations of certain legal fees paid; (e) a request for the services rendered to the union by six companies that in total received monies greater than $125,000; (f) an accounting of monies received and spent relating to a cell phone tower at 350 West 31st Street, NYC; (g) details of rents received concerning the operation of floors 1-8 for the Local 10 Building Corporation; (h) all minutes for Local 10 Building Corporation Board of Directors; and (i) a copy of the most recent Trustee Board Report with the names of the Trustees attending.

18. By letter dated August 24, 2007, Torrence denied in its entirety the request for documents and information contained in plaintiffs' August 21, 2007 letter.

19. By letter dated November 9, 2007, plaintiffs made a second request to Torrence, for documents and information, modifying its earlier request in some respects by seeking all vouchers beginning from January 2006 to July 27, 2007 from seven named individuals and all coordinators and Sgts. At Arms; and requesting a complete list of attendees to the APWU All-

4

    Craft Conference in Las Vegas, NV from November 5, 2007 through November 8, 2007, along with the amounts paid to each participant and the date the attendees' names were approved by the Executive Board to attend the conference.

20. Plaintiffs received no response from Torrence to their November 9, 2007 letter.

21. Plaintiffs request specific voucher information regarding Damon Branch, an appointed NY Metro Coordinator, who received $6000 or more for work allegedly performed in the field when he was actually in the union office and because Branch was paid monies while he was enrolled in the Associate Supervisor Program, which is a violation of NY Metro's Constitution, Article 9, Section 5.

22. Plaintiffs request specific voucher information regarding Theodore Nicholas, an appointed NY Metro Coordinator, who received money in excess of $37,000 for allegedly performing fieldwork as a Coordinator his salary is $2300 per year (NY Metro Area Postal Union Constitution, Article 9, Section 5). The Executive Board did not approve Nicholas' trip to the 2007 Florida BMC Conference, further; the conference was not relevant to Nicholas' position in the union whatsoever. He received air, hotel and substitution for 3 days all without the approval of the Executive Board.

23. Plaintiffs request specific voucher information regarding Tawanda Young, an appointed NY Metro Director of Human Relations, who has an annual salary of $2500. per year (Article 9, Section 6). Young's position is confined to social/community services and does not include undertaking any duties of a full time officer; precisely that of the Executive Secretary. Yet, Young was sent to Jacksonville, FL to the BMC Conference without

5

the approval of the Executive Board. Also, the BMC Conference is not in any way relevant to the position of the Director of Human Relations.

24. Plaintiffs request specific voucher information regarding Joann Flagler, the Director of the Clerk Craft, who was illegally given the duties of the position of Coordinating Vice President, which is plaintiff Poole's elected position. Flagler's position pays $3,300 annually (Article 7, Section 12), yet she earned in excess of $25,000 for the previous year.

25. Plaintiffs requests specific voucher information regarding Giselle Ambursley, the Trustee Board Chairperson. Per the Union Constitution, the Trustee Board should have meetings at least 4 times per year. There was not a Trustee Board meeting for over a year until January 2008. Also, it has been over a year since there had been a report from the Trustee Board.

26. Plaintiffs request specific information regarding Gary Schoichet, who is listed as a "consultant" to the "Union Mail" the NY Metro monthly newspaper to better understand what he contributes to the newspaper and the basis on which he is paid since Schoichet has been paid more than the previous newspaper consultants.

27. Plaintiffs request a breakdown of all contributions, gifts and grants totaling $28,139 in order to ascertain the nature of these expenditures; who received these monies and whether it was reported to the Executive Board and membership.

28. Regarding the Delage Landon Financial Services, whose charges to the Union amounted to $29,696, neither plaintiffs, the Executive Board nor the membership have any knowledge of the services it provided to the Union and plaintiffs request this information.

6

29. Regarding Beardon LLP Accounting Services, whose charges to the Union amounted to $63,437, neither plaintiffs, the Executive Board nor the membership have any knowledge of the services it provides nor the types of audits it performs to justify its charges to the Union and plaintiffs request this information.

30. Regarding Miceli and Koenig, CPA neither plaintiffs, the Executive Board nor the membership have any knowledge of the services it provides to justify its charges to the Union and plaintiffs request this information.

31. Regarding Tom Varecha Associates, neither plaintiffs, the Executive Board nor the membership have any knowledge of the services it provides to justify its charges of $5796 to the Union and plaintiffs request this information.

32. Regarding Working Advantage, neither plaintiffs, the Executive Board nor the membership have any knowledge of the services it provides to justify its charges of $7970 to the Union and plaintiffs request this information.

33. Regarding Merkle Direct Marketing, neither plaintiffs, the Executive Board nor the membership have any knowledge of the services it provides to justify its charges of $9097 to the Union and plaintiffs request this information.

34. Plaintiffs' request information regarding the Cell Phone Tower. When the Union bought its building at 350 W. 31st Street, NYC 10001, it established an agreement in 1998 with the Sprint Company to have a cell tower erected atop the building. At that time, then Vice President Tony Caniano announced at a Union meeting that the Union would be receiving $35,000 per year for the tower. Since that time the amount has been increased to $60,000. per year. This is income to the Union; however it is not reflected on the LM-2.

35. Although there is a contract with Sprint for the tower, when plaintiff Bembry was on the Local 10 Building Corporation Board of Directors, President Torrence refused to answer his inquiries about the cell phone towers.

36. Plaintiffs are concerned since there has not been a Building Corporation report or financial accounting for office rents, cell phone tower rents and other assets which could possibly be misappropriated. The chief officers of the Building Corporation are President Torrence, Executive Vice President Clarence Wall and Treasurer Wilfredo Figueroa.

37. Plaintiffs want to verify the payments from the Sprint contract and whether and to which account the monies are deposited.

38. For the period of time plaintiff Bembry was last on the Building Corporation Board of Directors, which is two years ago, there were no meetings or subsequent Minutes recorded or distributed.

39. There has never been a record of rents collected or how monies are disbursed for the Building Corporation.

40. Plaintiffs request records in the possession of Lidiann Rodriguez, NY Metro Bookkeeper. When the United States Department of Labor was investigating the Union concerning the last union election they asked for certain financial information concerning the Union. When plaintiff Bembry asked Lidiann what was going on, she looked frightened and replied, "Charles, if I tell you anything and it gets back to Clarice, she'll fire me."

41. In or about March or April 2007, Lidiann was working hand-in-hand with Torrence regarding certain financial reports.

42. Lidiann is not a postal employee -- though she is a union employee in another union. Between 2003 and 2007, Lidiann received a $24,000. non-

       contractual raise in salary. This brings her salary almost to parity with the two 42 year and 27 year secretaries who were forced to retire by Torrence. Lidiann's $24,000. raise more than doubled her starting salary.

43. Plaintiff has exhausted all possible avenues of address with NY Metro and Torrence with respect to claims under the LMRDA.

## DAMAGES

44. As a direct and proximate consequence of defendants' unlawful actions, plaintiffs has suffered an infringement of important federal statutory rights and have incurred attorney's fees and costs to vindicate their rights under the LMRDA.

## AS AND FOR A CLAIM FOR RELIEF

45. Plaintiffs reallege each of the allegations set forth in all prior paragraphs as if fully set forth here.

46. At all relevant times plaintiffs are and were members of NY Metro and elected officers of said union and are and were entitled to the rights, protections and benefits provided under the LMDRA.

47. Because union members are often in the best position to discover union corruption and have a vested interest in honest union leaders, Section 201(c), LMRDA requires unions to make available to their members those records which purportedly corroborate the LM-2 reports.

48. Plaintiffs have met the "just cause" requirement of the LMRDA and are entitled to examine the books, records and accounts and related records of NY Metro to verify the last LM-2 Report filed by the Union.

49. The just cause requirement under LMRDA simply entails a showing that the union members have some reasonable basis to question the accuracy of the union's annual financial reports submitted to Secretary of Labor, or the documents on which it was based, or that information in the annual report

has raised reasonable questions about the way union funds were handled. Plaintiffs have met their burden.

50. The Union and Torrence's failure to allow plaintiff's to examine the books, records and accounts and related records of NY Metro to verify the applicable LM-2 Report filed by the Union infringes on protected rights under the LMRDA.

51. Defendants' actions constitute a violation of Section 201(c) of the LMRDA, 29 U.S.C. § 431(c).

52. Plaintiffs request that defendants be required to allow plaintiffs to examine the Union records and further allow plaintiffs to have an accountant and attorney they retain, to be present with them at the time of examination and be permitted to copy such records at defendants' expense.

### JURY DEMAND

53. Plaintiffs demand trial by jury of all issues in this action.

**WHEREFORE** plaintiffs pray that the Court:

a. assume jurisdiction over this action;

b. enjoin defendants and issue a declaratory judgment that the acts, policies, practices and procedures of defendants complained of herein violated plaintiff's rights under § 201 (c) of the LMRDA, 29 U.S.C. §431(c).

c. enter judgment in favor of the plaintiffs, for their claims for relief and order defendants to provide access to plaintiffs of the applicable financial books, records and accounts of defendants, permitting plaintiffs to examine the Union records with an accountant and attorney, of their choosing, and permitting plaintiff's to copy the applicable records at defendants' expense;

    d. award plaintiffs all costs, expenses, and reasonable attorneys' fees associated with the prosecution of this civil action; and

    e. grant such additional or alternative relief as may appear to the Court to be just and proper.

Dated: New York, New York
March 7, 2008

_____
Robert N. Felix (RF 4229)
Attorney for Plaintiffs
11 Broadway, Suite 715
New York, N.Y. 10004
(212) 747-1433

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHARLES R. BEMBRY and MICHAEL POOLE

        Plaintiffs,

    - against -

NEW YORK METRO AREA POSTAL UNION,
AMERICAN POSTAL UNION, AFL-CIO,
CLARICE TORRENCE,

        Defendants
------------------------------------------------------------------x

**DOCKET NO.**

## COMPLAINT

**Robert N. Felix, Esq.**
Attorney for Plaintiffs
11 Broadway, Suite 715
New York, N.Y. 10004
(212) 747-1433