UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
CHARLES R. BEMBRY and
MICHAEL POOLE,

               Plaintiffs,

                      08-CV-02369 (VM) (FM)

- against -

NEW YORK METRO AREA
POSTAL UNION, AMERICAN
POSTAL UNION, AFL-CIO, and
CLARICE TORRENCE,

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## AFFIDAVIT OF LARRY CARY

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

      Larry Cary, being duly sworn, deposes and says:

      1.     I am a member of the firm of Cary Kane LLP, attorneys for defendants,

identified in the Complaint as New York Metro Area Postal Union, American Postal

Union, AFL-CIO[1] (hereafter "Union") and Clarice Torrence (hereafter "Torrence" and

collectively "defendants"). I am fully familiar with all the facts and circumstances

herein.

      2.     I submit this affidavit in support of defendants' motion to partially dismiss

plaintiffs' Complaint.

---

[1] Plaintiffs' Complaint misnames the New York Metro Area Postal Union's parent union. The New York Metro Area Postal Union is a branch of the American Postal Workers Union, AFL-CIO, not the American Postal Union.

3.      Annexed hereto as Exhibit A is a copy of the Form LM-2 Labor Organization Annual Report ("LM-2") filed by the Union with the Department of Labor on June 28, 2007.  This LM covers the period April 1, 2006 through March 31, 2007.

4.      Annexed hereto as Exhibit B is a copy of a letter to Torrence, as president of the Union from, *inter alia,* plaintiffs, dated August 21, 2007.

5.      Annexed hereto as Exhibit C is a copy of a letter to, *inter alia*, plaintiffs from the Union, dated August 24, 2007.

6.      Annexed hereto as Exhibit D is a copy of a letter to Torrence, as president of the Union from, *inter alia*, plaintiffs, dated November 9, 2007.

7.      Annexed hereto as Exhibit E is a copy of a letter to, *inter alia*, plaintiffs from the Union, dated November 13, 2007, along with copies of the envelopes in which the letter was sent showing that, as alleged by plaintiffs, the letter was not received by Bembry.

8.      Annexed hereto as Exhibit F is a copy of the most recent N    ew York Metro Area Postal Union Constitution.

Larry Cary

Sworn to before me this
24  day of April, 2008

Notary Public

JANET I. CRUZ-DIAZ
Notary Public, State of New York
No. 01CR6018875
Qualified in Richmond County
Commission Expires January 19, 20_11_

# AFFIDAVIT OF LARRY CARY EXHIBIT A (1)

Return

U.S. Department of Labor
Employment Standards
Administration
Office of Labor-Management
Standards
Washington, DC 20210

# FORM LM-2 LABOR ORGANIZATION
# ANNUAL REPORT

Form Approved
Office of Management and
Budget
No. 1215-0188
Expires: 12-31-2010

| MUST BE USED BY LABOR ORGANIZATIONS WITH $250,000 OR MORE IN TOTAL ANNUAL RECEIPTS AND LABOR ORGANIZATIONS IN TRUSTEESHIP |
|---|

This report is manadatory under P.L. 86-257, as amended.  Failure to comply may result in criminal prosecution, fines, or civil penalties as provided by 29 U.S.C. 439 or 440.

| READ THE INSTRUCTIONS CAREFULLY BEFORE PREPARING THIS REPORT. | | | |
|---|---|---|---|
| For Official Use Only | 1. FILE NUMBER 506-753 | 2. PERIOD COVERED From 4/1/2006 Through 3/31/2007 | 3. (a) AMENDED - Is this an amended report: No (b) HARDSHIP - Filed under the hardship procedures: No (c) TERMINAL - This is a terminal report: No |

| 4. AFFILIATION OR ORGANIZATION NAME POSTAL WORKERS, AMERICAN, AFL-CIO | 8. MAILING ADDRESS (Type or print in capital letters) | |
|---|---|---|
| 5. DESIGNATION (Local, Lodge, etc.) LOCAL UNION | 6. DESIGNATION NBR 10 | First Name CLARICE / Last Name TORRENCE |
| | | P.O Box - Building and Room Number 3RD FLOOR |
| 7. UNIT NAME (if any) NEW YORK METRO AREA | | Number and Street 350 WEST 31ST STREET |
| 9. Are your organization's records kept at its mailing address?    Yes | | City NEW YORK |
| | | State NY / ZIP Code + 4 10001 |

Each of the undersigned, duly authorized officers of the above labor organization, declares, under penalty of perjury and other applicable penalties of law, that all of the information submitted in this report (including information contained in any accompanying documents) has been examined by the signatory and is, to the best of the undersigned individual's knowledge and belief, true, correct and complete (See Section V on penalties in the instructions.)

| 26. SIGNED: Clarice Torrence | PRESIDENT | 27. SIGNED: Wilfredo Figueroa | TREASURER |
|---|---|---|---|
| Date: Jun 28, 2007   Contact Info: | | Date: Jun 28, 2007   Contact Info: | |

Form LM-2 (Revised 2003)

## ITEMS 10 THROUGH 21

10. During the reporting period did the labor organization create or participate in the administration of a trust or a fund or organization, as defined in the instructions, which provides benefits for members or beneficiaries? **Yes**

11. During the reporting period did the labor organization have a Political Action Committee (PAC) fund? **No**

12. During the reporting period did the labor organization have an audit or review of its books and records by an outside accountant or by a parent body auditor/representative? **No**

13. During the reporting period did the labor organization discover any loss or shortage of funds or other assets? (Answer "Yes" even if there has been repayment or recovery.) **No**

14. What is the maximum amount recoverable under the labor organization's fidelity bond for a loss caused by any officer, employee or agent of the labor organization who handled union funds? **$500,000**

15. During the reporting period did the labor organization acquire or dispose of any assets in a manner other than purchase or sale? **No**

16. Were any of the labor organization's assets pledged as security or encumbered in any way at the end of the reporting period? **No**

17. Did the labor organization have any contingent liabilities at the end of the reporting period? **No**

18. During the reporting period did the labor organization have any changes in its constitution or bylaws, other than rates of dues and fees, or in practices/procedures listed in the instructions? **No**

19. What is the date of the labor organization's next regular election of officers? **04/2009**

Form LM-2 (Revised 2003)

20. How many members did the labor organization have at the end of the reporting period? **7,308**

21. What are the labor organization's rates of dues and fees?

| Rates of Dues and Fees | | | | |
|---|---|---|---|---|
| Dues/Fees | Amount | | Unit | Minimum | Maximum |
| (a) Regular Dues/Fees | $22.56 | per | BIWEEKLY | | |
| (b) Working Dues/Fees | | per | | | |
| (c) Initiation Fees | | per | | | |
| (d) Transfer Fees | | per | | | |
| (e) Work Permits | | per | | | |

# STATEMENT A - ASSETS AND LIABILITIES

FILE NUMBER: 506-753

| ASSETS | Schedule Number | Start of Reporting Period (A) | End of Reporting Period (B) |
|---|---|---|---|
| 22. Cash | | $2,971,766 | $2,368,521 |
| 23. Accounts Receivable | 1 | $486,283 | $463,024 |
| 24. Loans Receivable | 2 | $0 | $0 |
| 25. U.S. Treasury Securities | | $0 | $0 |
| 26. Investments | 5 | $5,735,445 | $6,250,387 |
| 27. Fixed Assets | 6 | $16,227 | $14,621 |
| 28. Other Assets | 7 | $1,277 | $1,978 |
| 29. TOTAL ASSETS | | $9,210,998 | $9,098,531 |

| LIABILITIES | Schedule Number | Start of Reporting Period (A) | End of Reporting Period (B) |
|---|---|---|---|
| 30. Accounts Payable | 8 | $260,683 | $283,895 |
| 31. Loans Payable | 9 | $0 | $0 |
| 32. Mortgages Payable | | $0 | $0 |
| 33. Other Liabilities | 10 | $170,562 | $285,141 |
| 34. TOTAL LIABILITIES | | $431,245 | $569,036 |

| 35. NET ASSETS | | $8,779,753 | $8,529,495 |

Form LM-2 (Revised 2003)

## STATEMENT B - RECEIPTS AND DISBURSEMENTS

FILE NUMBER: 506-753

| CASH RECEIPTS | SCH | AMOUNT |
|---|---|---|
| 36. Dues and Agency Fees | | $4,042,981 |
| 37. Per Capita Tax | | $0 |
| 38. Fees, Fines, Assessments, Work Permits | | $0 |
| 39. Sale of Supplies | | $0 |
| 40. Interest | | $101,245 |
| 41. Dividends | | $0 |
| 42. Rents | | $0 |
| 43. Sale of Investments and Fixed Assets | 3 | $1,595 |
| 44. Loans Obtained | 9 | $0 |
| 45. Repayments of Loans Made | 2 | $0 |
| 46. On Behalf of Affiliates for Transmittal to Them | | $0 |
| 47. From Members for Disbursement on Their Behalf | | $0 |
| 48. Other Receipts | 14 | $81,001 |
| **49. TOTAL RECEIPTS** | | **$4,226,822** |

| CASH DISBURSEMENTS | SCH | AMOUNT |
|---|---|---|
| 50. Representational Activities | 15 | $898,421 |
| 51. Political Activities and Lobbying | 16 | $43,929 |
| 52. Contributions, Gifts, and Grants | 17 | $28,139 |
| 53. General Overhead | 18 | $1,024,536 |
| 54. Union Administration | 19 | $403,992 |
| 55. Benefits | 20 | $225,142 |
| 56. Per Capita Tax | | $1,578,787 |
| 57. Strike Benefits | | $0 |
| 58. Fees, Fines, Assessments, etc. | | $0 |
| 59. Supplies for Resale | | $0 |
| 60. Purchase of Investments and Fixed Assets | 4 | $513,262 |
| 61. Loans Made | 2 | $0 |
| 62. Repayment of Loans Obtained | 9 | $0 |
| 63. To Affiliates of Funds Collected on Their Behalf | | $0 |
| 64. On Behalf of Individual Members | | $0 |
| 65. Direct Taxes | | $120,565 |
| | | |
| 66. Subtotal | | $4,836,773 |
| 67. Withholding Taxes and Payroll Deductions | | |
| 67a. Total Withheld | $457,457 | |
| 67b. Less Total Disbursed | $450,751 | |
| 67c. Total Withheld But Not Disbursed | | $6,706 |
| **68. TOTAL DISBURSEMENTS** | | **$4,830,067** |

Form LM-2 (Revised 2003)

## SCHEDULE 1 - ACCOUNTS RECEIVABLE AGING SCHEDULE

FILE NUMBER: 506-753

| Entity or Individual Name (A) | Total Account Receivable (B) | 90-180 Days Past Due (C) | 180+ Days Past Due (D) | Liquidated Account Receivable (E) |
|---|---|---|---|---|
| Totals from all other accounts receivable | $463,024 | | | $0 |
| **TOTALS** (Column (B) Total will be automatically entered in Item 23, Column (B)) | $463,024 | $0 | $0 | $0 |

Form LM-2 (Revised 2003)

## SCHEDULE 2 - LOANS RECEIVABLE

FILE NUMBER: 506-753

There was no data found for this schedule.

## SCHEDULE 3 - SALE OF INVESTMENTS AND FIXED ASSETS

FILE NUMBER: 506-753

| Description (if land or buildings give location) (A) | Cost (B) | Book Value (C) | Gross Sales Price (D) | Amount Received (E) |
|---|---|---|---|---|
| MORTGAGE BACKED BONDS | $1,595 | $1,595 | $1,595 | $1,595 |
| **Total of all lines** | $1,595 | $1,595 | $1,595 | $1,595 |
| | | | 14. Less Reinvestments | $0 |
| (Net Sales total will automatically entered in Item 43) | | | **15. Net Sales** | $1,595 |

Form LM-2 (Revised 2003)

## SCHEDULE 4 - PURCHASE OF INVESTMENTS AND FIXED ASSETS      FILE NUMBER: 506-753

| Description (if land or buildings, give location)<br>(A) | Cost<br>(B) | Book Value<br>(C) | Cash Paid<br>(D) |
|---|---|---|---|
| COMPUTER EQUIPMENT | $4,711 | $4,711 | $4,711 |
| APWU LOCAL 10 BUILDING CORP- CAPITAL CONTRIBUTION | $508,551 | $508,551 | $508,551 |
| Total of all lines | $513,262 | $513,262 | $513,262 |
| | | 14. Less Reinvestments | $0 |
| (Net Purchases total will automatically entered in Item 60) | | 15. Net Purchases | $513,262 |

Form LM-2 (Revised 2003)

## SCHEDULE 5 - INVESTMENTS

FILE NUMBER: 506-753

| Description<br>(A) | Amount<br>(B) |
|---|---|
| **Marketable Securities** | |
| 1. Total Cost | $3,233 |
| 2. Total Book Value | $3,233 |
| 3. List each marketable security which has a book value over $5000 and exceeds 5% of Line 2. | |
| ▪ . | $0 |
| **Other Investments** | |
| 4. Total Cost | $6,247,154 |
| 5. Total Book Value | $6,247,154 |
| 6. List each other investment which has a book value over $5000, of Line 5.  Also list each Trust which is an investment. | |
| ▪ APWU LOCAL 10 BUILDING CORP | $6,247,154 |
| **7. Total of Lines 2 and 5** (Total will be automatically entered in Item 26, Column(B)) | **$6,250,387** |

Form LM-2 (Revised 2003)

## SCHEDULE 6 - FIXED ASSETS

FILE NUMBER: 506-753

| Description (A) | Cost or Other Basis (B) | Total Depreciation or Amount Expensed (C) | Book Value (D) | Value (E) |
|---|---|---|---|---|
| 1. Land (give location) | $0 | | $0 | $0 |
| 3. Buildings (give location) | $0 | $0 | $0 | $0 |
| 5. Automobiles and Other Vehicles | $0 | $0 | $0 | $0 |
| 6. Office Furniture and Equipment | $183,005 | $168,384 | $14,621 | $14,621 |
| 7. Other Fixed Assets | $0 | $0 | $0 | $0 |
| **8. Totals of Lines 1 through 7** (Column(D) Total will be automatically entered in Item 27, Column(B)) | $183,005 | $168,384 | $14,621 | $14,621 |

Form LM-2 (Revised 2003)

## SCHEDULE 7 - OTHER ASSETS

FILE NUMBER: 506-753

| Description (A) | Book Value (B) |
|---|---|
| PREPAID EXPENSES | $1,978 |
| **Total Other Assets** (Total will be automatically entered in Item 28, Column(B)) | $1,978 |

Form LM-2 (Revised 2003)

## SCHEDULE 8 - ACCOUNTS PAYABLE AGING SCHEDULE

FILE NUMBER: 506-753

| Entity or Individual Name (A) | Total Account Payable (B) | 90-180 Days Past Due (C) | 180+ Days Past Due (D) | Liquidated Account (E) |
|---|---|---|---|---|
| Total from all other accounts payable | $283,895 | $0 | $0 | $0 |
| **Total Accounts Payable** (Column(B) Total will be automatically entered in Item 30, Column(D)) | $283,895 | $0 | $0 | $0 |

Form LM-2 (Revised 2003)

## SCHEDULE 9 - LOANS PAYABLE

FILE NUMBER: 506-753

There was no data found for this schedule.

## SCHEDULE 10 - OTHER LIABILITIES

FILE NUMBER: 506-753

| Description (A) | Amount at End of Period (B) |
|---|---|
| ACCRUED VACATION & SICK PAY | $285,141 |
| **Total Other Liabilities** (Total will be automatically entered in Item 33, Column(D)) | **$285,141** |

Form LM-2 (Revised 2003)

## SCHEDULE 11 - ALL OFFICERS AND DISBURSEMENTS TO OFFICERS

FILE NUMBER: 506-753

| | (A) Name | (B) Title | (C) Status | (D) Gross Salary Disbursements (before any deductions) | (E) Allowances Disbursed | (F) Disbursements for Official Business | (G) Other Disbursements not reported in (D) thru (F) | (H) TOTAL |
|---|---|---|---|---|---|---|---|---|
| A B C | CHARLES   BEMBRY JR EXECUTIVE SECRETARY | | | $77,943 | $0 | $184 | $0 | $78,127 |
| I | Schedule 15 Representational Activities | 85 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 5 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 10 % |
| A B C | JOSEPH  R  CAPOBIANC ASST.DIR.,NJI & BMC | | | $12,797 | $500 | $615 | $0 | $13,912 |
| I | Schedule 15 Representational Activities | 98 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 2 % |
| A B C | CHARLES  J  CARNES TREASURER | | | $75,230 | $0 | $108 | $0 | $75,338 |
| I | Schedule 15 Representational Activities | 15 % | Schedule 16 Political Activities and Lobbying | 1 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 74 % | Schedule 19 Administration | 10 % |
| A B C | DOROTHY  M  DAVIS DIR. BX. N | | | $5,013 | $0 | $0 | | $5,013 |
| I | Schedule 15 Representational Activities | 90 % | Schedule 16 Political Activities and Lobbying | 10 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |
| A B C | ABRIITO   EL DIRECTOR OF ORG. | | | $75,194 | $0 | $131 | $0 | $75,325 |
| I | Schedule 15 Representational Activities | 90 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 10 % |
| A B C | WILFREDO   FIGUEROA ASST. DIR. MORGAN P. & DC | | | $4,549 | $350 | $50 | $0 | $4,949 |
| I | Schedule 15 | | Schedule 16 Political | | Schedule 17 | | Schedule 18 | | Schedule 19 | |

| I Representational Activities | 98 % | Activities and Lobbying | 0 % | Contributions | 0 % | General Overhead | 0 % | Administration | 2 % |
|---|---|---|---|---|---|---|---|---|---|
| A JOANN FLAGLER<br>B DIRECTOR, CLERK DIVISION<br>C | | | $26,040 | | $500 | | $28 | | $0 | $26,568 |

| I Schedule 15 Representational Activities | 90 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 5 % | Schedule 19 Administration | 5 % |
|---|---|---|---|---|---|---|---|---|---|
| A YOLANDA GRANT<br>B DIR. MORGAN P &DC<br>C | | | $8,708 | | $350 | | $0 | | $0 | $9,058 |

| I Schedule 15 Representational Activities | 100 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |
|---|---|---|---|---|---|---|---|---|---|
| A HECTOR LOPEZ<br>B SECTOR AIDE<br>C N | | | $3,924 | | $250 | | $0 | | $0 | $4,174 |

| I Schedule 15 Representational Activities | 85 % | Schedule 16 Political Activities and Lobbying | 15 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |
|---|---|---|---|---|---|---|---|---|---|
| A DULINE MCCOY<br>B ASST. DIR. BRONX DIVISION<br>C | | | $9,057 | | $350 | | $18 | | $0 | $9,425 |

| I Schedule 15 Representational Activities | 85 % | Schedule 16 Political Activities and Lobbying | 5 % | Schedule 17 Contributions | 5 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 5 % |
|---|---|---|---|---|---|---|---|---|---|
| A ADRIANO MEASSO<br>B DIRECTOR NJI & BMC<br>C | | | $19,595 | | $400 | | $496 | | $0 | $20,491 |

| I Schedule 15 Representational Activities | 98 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 2 % |
|---|---|---|---|---|---|---|---|---|---|
| A JAMES E MOORE<br>B SECTOR AIDE<br>C | | | $13,119 | | $0 | | $391 | | $0 | $13,510 |

| I Schedule 15 Representational Activities | 90 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 10 % |
|---|---|---|---|---|---|---|---|---|---|
| A TIMOTHY NEILAN<br>B DIRECTOR DVD<br>C | | | $6,364 | | $250 | | $296 | | $0 | $6,910 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| I | Schedule 15 Representational Activities | 90 % | Schedule 16 Political Activities and Lobbying | 5 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 5 % | Schedule 19 Administration | 0 % |
| A B C | HERMAN B NICHOLLS VICE PRESIDENT | | | $6,413 | | $250 | | $60 | | $0 | $6,723 |
| I | Schedule 15 Representational Activities | 85 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 15 % |
| A B C | MICHAEL POOLE COORD. V.P. | | | $9,050 | | $0 | | $112 | | $0 | $9,162 |
| I | Schedule 15 Representational Activities | 30 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 70 % |
| A B C | WILLIAM R PUGH DIR. MOTOR VEHICLES N | | | $16,705 | | $500 | | $0 | | $0 | $17,205 |
| I | Schedule 15 Representational Activities | 80 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 20 % |
| A B C | YVETTE REYES SECTOR AIDE | | | $5,630 | | $250 | | $63 | | $0 | $5,943 |
| I | Schedule 15 Representational Activities | 85 % | Schedule 16 Political Activities and Lobbying | 5 % | Schedule 17 Contributions | 5 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 5 % |
| A B C | PHILLIP ROSSO ASST. DIR. MAINT. N | | | $2,621 | | $250 | | $0 | | $0 | $2,871 |
| I | Schedule 15 Representational Activities | 90 % | Schedule 16 Political Activities and Lobbying | 5 % | Schedule 17 Contributions | 5 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |
| A B C | GIACOMO RUTIGLIANO DIR. MAINT. N | | | $4,673 | | $250 | | $0 | | $0 | $4,923 |
| I | Schedule 15 Representational Activities | 80 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 20 % |
| A B | FRANSICO SANCHEZ DIR. INDUSTRIAL RELATIONS C | | | $80,024 | | $100 | | $61 | | $0 | $80,185 |

| C | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| I | Schedule 15 Representational Activities | 80 % | Schedule 16 Political Activities and Lobbying | 5 % | Schedule 17 Contributions | 5 % | Schedule 18 General Overhead | 5 % | Schedule 19 Administration | 5 % |
| A B C | NORMAN    SHEPHERD JR ASST. DIR. CLERK CRAFT | | | $19,041 | | $250 | | $82 | | $0 | $19,373 |
| I | Schedule 15 Representational Activities | 70 % | Schedule 16 Political Activities and Lobbying | 10 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 20 % |
| A B C | CLARICE    TORRENCE PRESIDENT | | | $101,034 | | $1,750 | | $1,197 | | $0 | $103,981 |
| I | Schedule 15 Representational Activities | 45 % | Schedule 16 Political Activities and Lobbying | 5 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 5 % | Schedule 19 Administration | 45 % |
| A B C | SHARON    TYRRELL ASST. DIRECTOR DVD N | | | $5,791 | | $350 | | $54 | | $0 | $6,195 |
| I | Schedule 15 Representational Activities | 90 % | Schedule 16 Political Activities and Lobbying | 5 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 5 % | Schedule 19 Administration | 0 % |
| A B C | CLARENCE    WALL JR EXECUTIVE VP | | | $87,100 | | $250 | | $1,193 | | $0 | $88,543 |
| I | Schedule 15 Representational Activities | 50 % | Schedule 16 Political Activities and Lobbying | 10 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 40 % |
| A B C | GREGORY  C  WILSON LEGISLATIVE DIRECTOR | | | $30,601 | | $100 | | $50 | | $0 | $30,751 |
| I | Schedule 15 Representational Activities | 40 % | Schedule 16 Political Activities and Lobbying | 40 % | Schedule 17 Contributions | 10 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 10 % |
| A B C | CHARES    ZLATKIN V.P. EDITOR N | | | $30,065 | | $0 | | $1,122 | | $0 | $31,187 |
| I | Schedule 15 Representational Activities | 75 % | Schedule 16 Political Activities and Lobbying | 10 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 10 % | Schedule 19 Administration | 5 % |
| A | DAMON    BRANCH SECTOR AIDE | | | $6,495 | | $0 | | $0 | | $0 | $6,495 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| B C | P | | | | | | | | |
| I | Schedule 15 Representational Activities | 94 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 6 % |
| A B C | GYNTTEEN A CUTHBERT ASST. DIR. D.V.D. P | | | $552 | | $0 | | $0 | | $0 | $552 |
| I | Schedule 15 Representational Activities | 94 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 6 % |
| A B C | PATRICK J HAYES DIR. MAIL HANDLER DIV P | | | $275 | | $0 | | $0 | | $0 | $275 |
| I | Schedule 15 Representational Activities | 100 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |
| A B C | MARVIN L HODGES DIR. MAINTENANCE DIVISION P | | | $550 | | $0 | | $0 | | $0 | $550 |
| I | Schedule 15 Representational Activities | 100 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |
| A B C | WILLIAM E KREUTER ASST. DIR. MAINTENANCE P | | | $8,286 | | $250 | | $0 | | $0 | $8,536 |
| I | Schedule 15 Representational Activities | 98 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 2 % |
| A B C | SYNTHIA R NARI VICE PRESIDENT P | | | $437 | | $0 | | $0 | | $0 | $437 |
| I | Schedule 15 Representational Activities | 100 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |
| A B C | MAXIMO RIVERA ASST. DIR. BRONX DIVISION P | | | $4,237 | | $0 | | $0 | | $0 | $4,237 |
| I | Schedule 15 Representational Activities | 100 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |

| A B P C | KATTIE R WILLIAMS DIR. MOTOR VEHICLE DIV. | | | $275 | $0 | $0 | $0 | $275 |
|---|---|---|---|---|---|---|---|---|
| I | Schedule 15 Representational Activities | 100 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |

| Total Officer Disbursements | $757,388 | $7,500 | $6,311 | $0 | $771,199 |
|---|---|---|---|---|---|
| Less Deductions | | | | | $245,402 |
| Net Disbursements | | | | | $525,797 |

Form LM-2 (Revised 2003)

# AFFIDAVIT OF LARRY CARY EXHIBIT A (2)

# SCHEDULE 12 - DISBURSEMENTS TO EMPLOYEES

FILE NUMBER: 506-753

| (A) Name | (B) Title | (C) Other Payer | (D) Gross Salary Disbursements (before any deductions) | (E) Allowances Disbursed | (F) Disbursements for Official Business | (G) Other Disbursements not reported in (D) thru (F) | (H) TOTAL |
|---|---|---|---|---|---|---|---|
| A GISELLE E AMBURSLEY<br>B TRUSTEE<br>C N/A | | | $22,484 | $250 | $50 | $0 | $22,784 |
| I Schedule 15 Representational Activities | 85 % | Schedule 16 Political Activities and Lobbying | 10 % Schedule 17 Contributions | 5 % Schedule 18 General Overhead | 0 % Schedule 19 Administration | 0 % | |
| A ELEANOR BAILEY<br>B CHAIR OF ELEC. COMMITTEE<br>C N/A | | | $13,046 | $0 | $441 | $0 | $13,487 |
| I Schedule 15 Representational Activities | 0 % | Schedule 16 Political Activities and Lobbying | 0 % Schedule 17 Contributions | 0 % Schedule 18 General Overhead | 0 % Schedule 19 Administration | 100 % | |
| A LIDIANN DIAZ<br>B ADMINISTRATIVE<br>C N/A | | | $52,966 | $0 | $100 | $181 | $53,247 |
| I Schedule 15 Representational Activities | 0 % | Schedule 16 Political Activities and Lobbying | 0 % Schedule 17 Contributions | 0 % Schedule 18 General Overhead | 100 % Schedule 19 Administration | 0 % | |
| A SAM JOHNSON<br>B OFFICE CLEANING<br>C N/A | | | $34,320 | $0 | $89 | $0 | $34,409 |
| I Schedule 15 Representational Activities | 0 % | Schedule 16 Political Activities and Lobbying | 0 % Schedule 17 Contributions | 0 % Schedule 18 General Overhead | 100 % Schedule 19 Administration | 0 % | |
| A ERNESTO JORDAN<br>B SHOP STEWARD<br>C N/A | | | $11,675 | $0 | $260 | $0 | $11,935 |
| I Schedule 15 Representational Activities | 40 % | Schedule 16 Political Activities and Lobbying | 0 % Schedule 17 Contributions | 0 % Schedule 18 General Overhead | 20 % Schedule 19 Administration | 40 % | |
| A WAYNE LEWIS<br>B SHOP STEWARD<br>C N/A | | | $10,447 | $1,500 | $12 | $0 | $11,959 |
| I Schedule 15 Representational Activities | 98 % | Schedule 16 Political Activities and Lobbying | 0 % Schedule 17 Contributions | 2 % Schedule 18 General Overhead | 0 % Schedule 19 Administration | 0 % | |

4/23/2008

| | | Lobbying | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| A B C | ALDO MACIOCI<br>SHOP STEWARD<br>N/A | | | $13,706 | | $400 | $111 | $0 | $14,217 |
| I | Schedule 15<br>Representational<br>Activities | 98 % | Schedule 16<br>Political<br>Activities and<br>Lobbying | 0 % | Schedule 17<br>Contributions | 0 % | Schedule 18<br>General<br>Overhead | 0 % | Schedule 19<br>Administration | 2 % |
| A B C | KEJA MCCLARIN<br>SHOP STEWARD<br>N/A | | | $11,569 | | $250 | $58 | $0 | $11,877 |
| I | Schedule 15<br>Representational<br>Activities | 75 % | Schedule 16<br>Political<br>Activities and<br>Lobbying | 0 % | Schedule 17<br>Contributions | 0 % | Schedule 18<br>General<br>Overhead | 0 % | Schedule 19<br>Administration | 25 % |
| A B C | SHILDA MOTLEY SIMMONS<br>SHOP STEWARD<br>N/A | | | $25,611 | | $0 | $460 | $0 | $26,071 |
| I | Schedule 15<br>Representational<br>Activities | 60 % | Schedule 16<br>Political<br>Activities and<br>Lobbying | 0 % | Schedule 17<br>Contributions | 0 % | Schedule 18<br>General<br>Overhead | 0 % | Schedule 19<br>Administration | 40 % |
| A B C | JAMES PEREZ<br>SHOP STEWARD<br>N/A | | | $13,348 | | $250 | $9 | $0 | $13,607 |
| I | Schedule 15<br>Representational<br>Activities | 85 % | Schedule 16<br>Political<br>Activities and<br>Lobbying | 15 % | Schedule 17<br>Contributions | 0 % | Schedule 18<br>General<br>Overhead | 0 % | Schedule 19<br>Administration | 0 % |
| A B C | LILLIAN PURNELL<br>ADMINISTRATIVE<br>N/A | | | $59,107 | | $0 | $0 | $180 | $59,287 |
| I | Schedule 15<br>Representational<br>Activities | 0 % | Schedule 16<br>Political<br>Activities and<br>Lobbying | 0 % | Schedule 17<br>Contributions | 0 % | Schedule 18<br>General<br>Overhead | 100 % | Schedule 19<br>Administration | 0 % |
| A B C | FLORENCE SUMMERGRAD<br>SHOP STEWARD<br>N/A | | | $19,557 | | $400 | $0 | $0 | $19,957 |
| I | Schedule 15<br>Representational<br>Activities | 98 % | Schedule 16<br>Political<br>Activities and<br>Lobbying | 0 % | Schedule 17<br>Contributions | 0 % | Schedule 18<br>General<br>Overhead | 0 % | Schedule 19<br>Administration | 2 % |
| A B C | MARTHA J WILLIAMS<br>ADMINISTRATIVE<br>N/A | | | $58,806 | | $0 | $0 | $180 | $58,986 |
| I | Schedule 15 | | Schedule 16 | | | | Schedule 18 | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| I | Representational Activities | 0 % | Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | General Overhead | 100 % | Schedule 19 Administration | 0 % |
| A B C | DOLORES YOUNG SHOP STEWARD N/A | | | $12,333 | | $0 | | $767 | | $0 | $13,100 |
| I | Schedule 15 Representational Activities | 0 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 100 % |
| A B C | TAWANDA YOUNG DIRECTOR HUMAN RELATIONS N/A | | | $42,235 | | $150 | | $2,469 | | $0 | $44,854 |
| I | Schedule 15 Representational Activities | 40 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 60 % |
| A B C | THEODORO NICHOLAS SHOP STEWARD N/A | | | $35,994 | | $950 | | $276 | | $0 | $37,220 |
| I | Schedule 15 Representational Activities | 96 % | Schedule 16 Political Activities and Lobbying | 2 % | Schedule 17 Contributions | 2 % | Schedule 18 General Overhead | 0 % | Schedule 19 Administration | 0 % |

| | | | | | |
|---|---|---|---|---|---|
| TOTALS RECEIVED BY EMPLOYEES MAKING LESS THAN $10000 | $178,919 | $11,450 | $3,349 | $0 | $193,718 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| I | Schedule 15 Representational Activities | 78 % | Schedule 16 Political Activities and Lobbying | 0 % | Schedule 17 Contributions | 0 % | Schedule 18 General Overhead | 4 % | Schedule 19 Administration | 18 % |

| | | | | | |
|---|---|---|---|---|---|
| Total Employee Disbursements | $616,123 | $15,600 | $8,451 | $541 | $640,715 |
| Less Deductions | | | | | $212,055 |
| Net Disbursements | | | | | $428,660 |

Form LM-2 (Revised 2003)

## SCHEDULE 13 - MEMBERSHIP STATUS

FILE NUMBER: 506-753

| Category of Membership (A) | Number (B) | Voting Eligibility (C) |
|---|---|---|
| ACTIVE | 6,884 | Yes |
| INACTIVE | 424 | Yes |
| Members | 7,308 | |
| Agency Fee Payers* | | |
| **Total Members/Fee Payers** | 7,308 | |
| *Agency Fee Payers are not considered members of the labor organization. | | |

Form LM-2 (Revised 2003)

## DETAILED SUMMARY PAGE - SCHEDULES 14 THROUGH 19

FILE NUMBER: 506-753

| SCHEDULE 14   OTHER RECEIPTS | |
|---|---|
| 1. Named Payer Itemized Receipts | $8,746 |
| 2. Named Payer Non-itemized Receipts | $9,687 |
| 3. All Other Receipts | $62,568 |
| **4. Total Receipts** | $81,001 |
| | |
| | |

| SCHEDULE 17   CONTRIBUTIONS, GIFTS & GRANTS | |
|---|---|
| 1. Named Payee Itemized Disbursements | $12,000 |
| 2. Named Payee Non-itemized Disbursements | $0 |
| 3. To Officers | $11,902 |
| 4. To Employees | $2,123 |
| 5. All Other Disbursements | $2,114 |
| **6. Total Disbursements** | $28,139 |

| SCHEDULE 15   REPRESENTATIONAL ACTIVITIES | |
|---|---|
| 1. Named Payee Itemized Disbursements | $25,244 |
| 2. Named Payee Non-itemized Disbursements | $5,788 |
| 3. To Officers | $516,088 |
| 4. To Employees | $310,239 |
| 5. All Other Disbursements | $41,062 |
| **6. Total Disbursements** | $898,421 |

| SCHEDULE 18   GENERAL OVERHEAD | |
|---|---|
| 1. Named Payee Itemized Disbursements | $460,757 |
| 2. Named Payee Non-itemized Disbursements | $180,090 |
| 3. To Officers | $70,061 |
| 4. To Employees | $216,065 |
| 5. All Other Disbursements | $97,563 |
| **6. Total Disbursements** | $1,024,536 |

| SCHEDULE 16   POLITICAL ACTIVITIES AND LOBBYING | |
|---|---|
| 1. Named Payee Itemized Disbursements | $0 |
| 2. Named Payee Non-itemized Disbursements | $0 |
| 3. To Officers | $38,866 |
| 4. To Employees | $5,063 |
| 5. All Other Disbursements | |
| **6. Total Disbursement** | $43,929 |

| SCHEDULE 19   UNION ADMINISTRATION | |
|---|---|
| 1. Named Payee Itemized Disbursements | $111,714 |
| 2. Named Payee Non-itemized Disbursements | $20,192 |
| 3. To Officers | $134,283 |
| 4. To Employees | $107,224 |
| 5. All Other Disbursements | $30,579 |
| **6. Total Disbursements** | $403,992 |

Form LM-2 (Revised 2003)

## SCHEDULE 14 - OTHER RECEIPTS

FILE NUMBER: 506-753

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| APWU AFL-CIO | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $8,749 |
| 1300 L STREET NW WASHINGTON DC 20005 | **Total of All Transactions** | | $8,749 |
| Type or Classification (B) | | | |
| INTERNATIONAL UNION | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| HYATT REGENCY HOTEL | REFUND OF HOTEL CHARGES | 08/24/2006 | $8,746 |
| | Total Itemized Transactions | | $8,746 |
| 201 S COLUMBUS BLVD PHILADELPHIA PA 19106 | Total Non-Itemized Transactions | | $938 |
| | **Total of All Transactions** | | $9,684 |
| Type or Classification (B) | | | |
| HOTEL | | | |

Form LM-2 (Revised 2003)

# SCHEDULE 15 - REPRESENTATIONAL ACTIVITIES

FILE NUMBER: 506-753

| Name and Address<br>(A) | Purpose<br>(C) | Date<br>(D) | Amount<br>(E) |
|---|---|---|---|
| CARY KANE, LLP<br><br>1350 BROADWAY<br>NEW YORK<br>NY<br>10018 | LEGAL REPRESENTATION | 12/19/2006 | $6,884 |
| | LEGAL REPRESENTATION | 07/18/2006 | $6,360 |
| | LEGAL REPRESENTATION | 06/15/2006 | $6,000 |
| | LEGAL REPRESENTATION | 10/05/2006 | $6,000 |
| | Total Itemized Transactions | | $25,244 |
| Type or Classification<br>(B) | Total Non-Itemized Transactions | | $5,788 |
| LEGAL COUNSEL | **Total of All Transactions** | | $31,032 |

Form LM-2 (Revised 2003)

## SCHEDULE 16 - POLITICAL ACTIVITIES AND LOBBYING

FILE NUMBER 506-753

There was no data found for this schedule.

## SCHEDULE 17 - CONTRIBUTIONS, GIFTS & GRANTS

FILE NUMBER: 506-753

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| APWU-AFLCIO<br><br>1300 L STREET NW<br>WASHINGTON<br>DC<br>20005 | CAMPAIGN TO STOP CLOSING OF POST OFFICES | 10/05/2006 | $12,000 |
| | Total Itemized Transactions | | $12,000 |
| | Total Non-Itemized Transactions | | |
| Type or Classification (B) | **Total of All Transactions** | | $12,000 |
| INTERNATIONAL UNION | | | |

Form LM-2 (Revised 2003)

## SCHEDULE 18 - GENERAL OVERHEAD

FILE NUMBER: 506-753

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| BERDON LLP<br><br>360 MADISON AVENUE<br>NEW YORK<br>NY<br>10017 | ACCOUNTING SERVICES | 09/13/2006 | $20,036 |
| | ACCOUNTING SERVICES | 08/28/2006 | $19,668 |
| | ACCOUNTING SERVICES | 01/17/2007 | $14,645 |
| | ACCOUNTING SERVICES | 01/17/2007 | $9,088 |
| | Total Itemized Transactions | | $63,437 |
| Type or Classification (B) | Total Non-Itemized Transactions | | |
| ACCOUNTING FIRM | **Total of All Transactions** | | $63,437 |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| CARY KANE, LLP<br><br>1350 BROADWAY<br>NEW YORK<br>NY<br>10018 | LEGAL REPRESENTATION | 02/13/2007 | $6,506 |
| | LEGAL REPRESENTATION | 08/23/2006 | $6,124 |
| | LEGAL REPRESENTATION | 09/13/2006 | $6,000 |
| | LEGAL REPRESENTATION | 11/20/2006 | $6,000 |
| | LEGAL REPRESENTATION | 01/12/2007 | $6,000 |
| | LEGAL REPRESENTATION | 03/09/2007 | $6,000 |
| Type or Classification (B) | Total Itemized Transactions | | $36,630 |
| LEGAL COUNSEL | Total Non-Itemized Transactions | | $3,356 |
| | **Total of All Transactions** | | $39,986 |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| CERIDIAN<br>10989<br><br>NEWARK<br>NJ<br>08691 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $13,068 |
| | **Total of All Transactions** | | $13,068 |
| Type or Classification (B) | | | |
| PAYROLL PROCESSOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| CITICORP VENDOR FINANCE<br>7247<br><br>PHILADELPHIA<br>PA<br>19170 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $20,809 |
| | **Total of All Transactions** | | $20,809 |
| Type or Classification (B) | | | |
| EQUIPMENT LEASING VENDOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| CONSOLIDATED COLOR PRESS<br><br>307 7TH AVENUE, SUITE 602<br>NEW YORK<br>NY<br>10001 | NEWSLETTER | 06/15/2006 | $6,653 |
| | NEWSLETTER | 11/03/2006 | $6,193 |
| | NEWSLETTER | 01/26/2007 | $6,132 |
| | NEWSLETTER | 02/22/2007 | $6,132 |
| | NEWSLETTER | 03/23/2007 | $6,132 |
| Type or Classification (B) | NEWSLETTER | 09/07/2006 | $6,043 |
| PRINTING VENDOR | NEWSLETTER | 11/20/2006 | $6,043 |

| NEWSLETTER | 12/29/2006 | $6,043 |
|---|---|---|
| NEWSLETTER | 04/10/2006 | $5,646 |
| NEWSLETTER | 05/15/2006 | $5,501 |
| NEWSLETTER | 07/19/2006 | $5,501 |
| MEMBERSHIP CARDS | 05/15/2006 | $5,156 |
| Total Itemized Transactions | | $71,175 |
| Total Non-Itemized Transactions | | $6,570 |
| **Total of All Transactions** | | **$77,745** |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| COVAD COMMUNICATIONS 39000 SAN FRANCISCO CA 94139 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $6,092 |
| | **Total of All Transactions** | | **$6,092** |
| Type or Classification (B) | | | |
| TELECOMMUNICATIONS PROVIDER | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| CREST OFFICE PRODUCTS 448 WEST 16TH STREET NEW YORK NY 10011 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $15,015 |
| | **Total of All Transactions** | | **$15,015** |
| Type or Classification (B) | | | |
| OFFICE SUPPLIES VENDOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES 41601 PHILADELPHIA PA 19101 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $29,696 |
| | **Total of All Transactions** | | **$29,696** |
| Type or Classification (B) | | | |
| EQUIPMENT LEASING VENDOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| DORNEY PARK 3830 DORNEY PARK ROAD ALLENTOWN PA 18104 | MEMBERSHIP EVENT | 06/16/2006 | $33,320 |
| | MEMBERSHIP EVENT | 08/23/2006 | $13,794 |
| | Total Itemized Transactions | | $47,114 |
| | Total Non-Itemized Transactions | | |
| | **Total of All Transactions** | | **$47,114** |
| Type or Classification (B) | | | |
| AMUSEMENT PARK | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| GAIN COMMUNICATIONS, INC. | RETAINER | 06/15/2006 | $5,110 |

| 411 SETTE DRIVE, BLDG. S-4 PARAMUS NJ 07652 | Total Itemized Transactions | | $5,110 |
|---|---|---|---|
| | Total Non-Itemized Transactions | | $535 |
| | **Total of All Transactions** | | $5,645 |
| **Type or Classification (B)** | | | |
| TELECOM SYSTEM MAINTENANCE VENDOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| GARY SCHOICHET | NEWSLETTER | 06/09/2006 | $7,250 |
| | NEWSLETTER | 02/08/2007 | $6,900 |
| 351 WEST 24TH STREET | NEWSLETTER | 03/12/2007 | $6,900 |
| NEW YORK | NEWSLETTER | 07/14/2006 | $6,500 |
| NY | NEWSLETTER | 09/08/2006 | $6,500 |
| 10011 | NEWSLETTER | 10/10/2006 | $6,500 |
| **Type or Classification (B)** | NEWSLETTER | 11/14/2006 | $6,500 |
| CONSULTANT | NEWSLETTER | 12/19/2006 | $6,500 |
| | NEWSLETTER | 01/08/2007 | $6,500 |
| | NEWSLETTER | 04/06/2006 | $5,000 |
| | NEWSLETTER | 05/09/2006 | $5,000 |
| | Total Itemized Transactions | | $70,050 |
| | Total Non-Itemized Transactions | | $4,418 |
| | **Total of All Transactions** | | $74,468 |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| HEWIG & MARVIC, INC. | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $6,288 |
| 2 BRADFORD COURT | **Total of All Transactions** | | $6,288 |
| TENAFLY NJ 07670 | | | |
| **Type or Classification (B)** | | | |
| PRINTING VENDOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| LESLIE'S NETWORK MANAGEMENT | IT SYSTEM MAINTENANCE | 11/03/2006 | $6,683 |
| | IT SYSTEM MAINTENANCE | 09/21/2006 | $6,303 |
| 116 S. CENTRE STREET | IT SYSTEM MAINTENANCE | 01/26/2007 | $6,238 |
| SOUTH ORANGE | IT SYSTEM MAINTENANCE | 08/24/2006 | $5,863 |
| NJ | IT SYSTEM MAINTENANCE | 04/24/2006 | $5,618 |
| 07079 | IT SYSTEM MAINTENANCE | 06/05/2006 | $5,618 |
| **Type or Classification (B)** | IT SYSTEM MAINTENANCE | 07/21/2006 | $5,618 |
| COMPUTER TECHNICIAN | IT SYSTEM MAINTENANCE | 12/29/2006 | $5,618 |
| | IT SYSTEM MAINTENANCE | 12/07/2006 | $5,597 |
| | IT SYSTEM MAINTENANCE | 06/30/2006 | $5,318 |
| | IT SYSTEM MAINTENANCE | 10/20/2006 | $5,318 |
| | IT SYSTEM MAINTENANCE | 02/22/2007 | $5,318 |
| | IT SYSTEM MAINTENANCE | 03/12/2007 | $5,317 |
| | IT SYSTEM MAINTENANCE | 03/29/2007 | $5,317 |
| | Total Itemized Transactions | | $79,744 |
| | Total Non-Itemized Transactions | | $1,095 |

| | Total of All Transactions | | $80,839 |
|---|---|---|---|

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| MERKLE DIRECT MARKETING 64897 BALTIMORE MD 21264 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $9,097 |
| | **Total of All Transactions** | | $9,097 |
| Type or Classification (B) | | | |
| DATA PROCESSOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| MICELI & KOENIG CPA'S, P.C. 485 UNDERHILL BLVD.,STE 100 SYOSSET NY 11791 | ACCOUNTING SERVICES | 07/01/2006 | $7,408 |
| | Total Itemized Transactions | | $7,408 |
| | Total Non-Itemized Transactions | | $10,381 |
| | **Total of All Transactions** | | $17,789 |
| Type or Classification (B) | | | |
| ACCOUNTING FIRM | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| MYRON MANUFACTURING 802616 CHICAGO IL 60680 | MEMBER ORGANIZER DIARIES | 12/19/2006 | $11,407 |
| | Total Itemized Transactions | | $11,407 |
| | Total Non-Itemized Transactions | | |
| | **Total of All Transactions** | | $11,407 |
| Type or Classification (B) | | | |
| PRINTING VENDOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| NEW YORK STATE INSURANCE FUND 199 CHURCH STREET NEW YORK NY 10007 | WORKERS COMPENSATION INSURANCE | 12/19/2006 | $8,954 |
| | WORKERS COMPENSATION INSURANCE | 04/10/2006 | $7,886 |
| | WORKERS COMPENSATION INSURANCE | 05/09/2006 | $5,632 |
| | Total Itemized Transactions | | $22,472 |
| | Total Non-Itemized Transactions | | $6,692 |
| Type or Classification (B) | **Total of All Transactions** | | $29,164 |
| INSURANCE COMPANY | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| PAETEC COMMUNICATIONS, INC. 1282 BUFFALO NY 14240 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $18,382 |
| | **Total of All Transactions** | | $18,382 |
| Type or Classification (B) | | | |
| TELECOMMUNICATIONS | | | |

| PROVIDER | | | |
|---|---|---|---|

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| PITNEY BOWES CREDIT CORP. 856460 LOUISVILLE KY 40285 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $10,251 |
| | **Total of All Transactions** | | $10,251 |
| Type or Classification (B) | | | |
| EQUIPMENT LEASING VENDOR | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| PITNEY BOWES PURCHASE POWER 856042 LOUISVILLE KY 40285 | POSTAGE | 04/24/2006 | $9,960 |
| | Total Itemized Transactions | | $9,960 |
| | Total Non-Itemized Transactions | | $9,830 |
| | **Total of All Transactions** | | $19,790 |
| Type or Classification (B) | | | |
| POSTAGE SUPPLIER | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| POSTMASTER NY 421 8TH AVENUE NEW YORK NY 10199 | POSTAGE | 06/30/2006 | $5,000 |
| | POSTAGE | 11/20/2006 | $5,000 |
| | Total Itemized Transactions | | $10,000 |
| | Total Non-Itemized Transactions | | $545 |
| | **Total of All Transactions** | | $10,545 |
| Type or Classification (B) | | | |
| POST OFFICE | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| TNT TRANSPORTATION 10 MANLEY STREET STATEN ISLAND NY 10309 | TRANSPORTATION FOR MEMBERSHIP EVENT | 06/16/2006 | $15,750 |
| | TRANSPORTATION FOR MEMBERSHIP EVENT | 08/23/2006 | $10,500 |
| | Total Itemized Transactions | | $26,250 |
| | Total Non-Itemized Transactions | | |
| | **Total of All Transactions** | | $26,250 |
| Type or Classification (B) | | | |
| CHARTER BUS SERVICE | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| WORKING ADVANTAGE ONE GROVE STREET, 2ND FLOOR WATERTOWN MA 02472 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $7,970 |
| | **Total of All Transactions** | | $7,970 |
| Type or Classification (B) | | | |
| TICKET BROKER | | | |

DOL Form Report (ERDS)

Form LM-2 (Revised 2003)

## SCHEDULE 19 - UNION ADMINISTRATION

FILE NUMBER: 506-753

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| AMERICAN ARBITRATION ASSOCIATION<br><br>355 MADISON AVENUE<br>NEW YORK<br>NY<br>10017-4605 | OFFICERS ELECTION | 09/21/2006 | $46,162 |
| | Total Itemized Transactions | | $46,162 |
| | Total Non-Itemized Transactions | | |
| | **Total of All Transactions** | | $46,162 |
| Type or Classification (B) | | | |
| ARBITRATORS | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| APWU HOTEL DEPOSIT<br><br>1300 L STREET NW<br>WASHINGTON<br>DC<br>20005 | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $7,632 |
| | **Total of All Transactions** | | $7,632 |
| Type or Classification (B) | | | |
| INTERNATIONAL UNION | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| CARY KANE, LLP<br><br>1350 BROADWAY<br>NEW YORK<br>NY<br>10018 | OFFICERS ELECTION | 05/15/2006 | $8,266 |
| | Total Itemized Transactions | | $8,266 |
| | Total Non-Itemized Transactions | | $3,820 |
| | **Total of All Transactions** | | $12,086 |
| Type or Classification (B) | | | |
| LEGAL COUNSEL | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| OXFELD COHEN, P.C.<br><br>60 PARK PLACE<br>NEWARK<br>NJ<br>07102 | MEDIATION AGREEMENT | 06/12/2006 | $7,286 |
| | Total Itemized Transactions | | $7,286 |
| | Total Non-Itemized Transactions | | |
| | **Total of All Transactions** | | $7,286 |
| Type or Classification (B) | | | |
| LEGAL COUNSEL | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| HYATT REGENCY HOTEL<br><br>201 S COLUMBUS BLVD<br>PHILADELPHIA<br>PA<br>19106 | LODGING FOR NATIONAL CONVENTION | 08/11/2006 | $50,000 |
| | Total Itemized Transactions | | $50,000 |
| | Total Non-Itemized Transactions | | $2,764 |
| | **Total of All Transactions** | | $52,764 |
| Type or Classification (B) | | | |
| HOTEL | | | |

| Name and Address (A) | Purpose (C) | Date (D) | Amount (E) |
|---|---|---|---|
| TOM VARECHA ASSOCIATES | Total Itemized Transactions | | $0 |
| | Total Non-Itemized Transactions | | $5,976 |
| 1350 SOUTH CALLE ROLPH PALM SPRINGS CA 92264 | **Total of All Transactions** | | $5,976 |
| Type or Classification (B) | | | |
| PRINTING VENDOR | | | |

Form LM-2 (Revised 2003)

## SCHEDULE 20 - BENEFITS

FILE NUMBER: 506-753

| Description (A) | To Whom Paid (B) | Amount (C) |
|---|---|---|
| PENSION-OFFICERS | U.S. POSTAL SERVICE | $42,632 |
| WELFARE-OFFICERS | U.S. POSTAL SERVICE | $38,974 |
| PENSION- OFFICERS | A.P.W.U AFL-CLO | $92,133 |
| WELFARE- OFFICE STAFF | LOCAL 153 HEALTH FUND | $29,343 |
| LIFE INSURANCE-OFFICERS | U.S. POSTAL SERVICE | $9,346 |
| PENSION- OFFICE STAFF | LOCAL 153 PENSION FUND | $8,550 |
| DISABILITY INSURANCE | NY STATE INSURANCE FUND | $2,728 |
| LONG-TERM DISABILITY INSURANCE | LOCAL 153 LT DISABILITY FUND | $1,005 |
| THRIFT SAVINGS PLAN | U.S. POSTAL SERVICE | $431 |
| **Total Benefits** | | $225,142 |

Form LM-2 (Revised 2003)

## 69. ADDITIONAL INFORMATION SUMMARY

Question 10: APWU LOCAL 10 BUILDING CORPORATION
350 WEST 31ST STREET
NEW YORK, NY 10001
PURPOSE: CORPORATION OWNS THE BUILDING WHERE THE UNION HAS ITS OFFICES.


Schedule 13 : ACTIVE MEMBERS ARE CURRENTLY EMPLOYED AND PAY DUES.


Schedule 13 : INACTIVE MEMBERS ARE TEMPORARILY NOT WORKING AND NOT PAYING DUES BUT RETAIN THE FULL RIGHTS OF A DUES PAYING MEMBER.


General Information: QUESTION 12: THE LOCAL'S INDEPENDENT ACCOUNTING FIRM HAS ISSUED A COMPILATION REPORT ON ITS FINANCIAL STATEMENTS.

LINE 71: THE FORM IS BEING SIGNED BY THE CURRENT SECRETARY TREASURER, IN OFFICE, AT THE TIME OF THIS FILING. HIS TITLE REPORTED ON SCHEDULE 11 IS THAT WHICH HE FORMERLY HELD (ASST. DIR. MORGAN P.&DC) DURING THE REPORTING PERIOD.


Form LM-2 (Revised 2003)

# AFFIDAVIT OF LARRY CARY EXHIBIT B

NY Metro Area Postal Union
350 West 31st Street
New York, NY 10001
August 21, 2007

Ms. Clarice Torrence
President
NY Metro Area Postal Union
350 West 31st Street
New York, NY 10001

certified # 7007 0710 0000 4990 4409

Re:   Request for NY Metro Area Postal Union Financial Information

Dear Ms. Torrence:

As it is our fiduciary right and responsibility under the prevailing
APWU National and NY Metro Local Constitutions, and the United States
Code, as elected officers of the New York Metro Area Postal Union, we
are requesting the following documents for our review:

* All vouchers beginning from June 2003 to, and including, July 27,
  2007 for the following individuals.

    1.   Damon Branch
    2.   Theodore Nicholas
    3.   Tawanda Young
    4.   Gregory Wilson
    5.   Joann Flagler
    6.   Charles Zlatkin
    7.   Shilda Motley-Simmons
    8.   Wayne Lewis
    9.   Ernesto Jordan
    10.  Norman Shepherd
    11.  Giselle Ambursley
    12.  Kejia McClarin

* A detailed record of services rendered, with monies spent, for
  Gary Schoichet, a consultant listed for the Union Mail.

* A break-down of *all* contributions, gifts, and grants totaling
  $28,139.00 as indicated in the most recent LM-2.

* A break down, with explanations, of all legal fees paid to Cary
  Kane, LLC from January 2006, to, and including, August 1, 2007.

C. Torrence - 2
July 31, 2007

- What services do the following companies perform for the union?
  Listed are their names and the amounts of money paid to them by
  NY Metro.

  | | | |
  |---|---|---|
  | 1. | DeLage Landon Financial Services | $29,696.00 |
  | 2. | Beardon LLP Accounting Services | $63,437.00 |
  | 3. | Miceli and Koenig, CPA Firm | 17,789.00 |
  | 4. | Tom Varecha Associates | $ 5,976.00 |
  | 5. | Working Advantage | $ 7,970.00 |
  | 6. | Merkle Direct Marketing | $ 9,097.00 |

- From 2003 until the present, a complete and detailed accounting
  of all monies received and spent relevant to the cell phone tower
  located at 350 W. 31st Street, New York, NY 10001.

- As the recent LM-2 does not contain specific financial
  information for the Local 10 Building Corporation, please have
  available for our review all detailed information concerning *rent*
  received from each tenant and *all other* financial reports
  concerning the operation of Floors 1 - 8 for the Local 10
  Building Corporation.

- All Minutes for all meetings of the Local 10 Building Corporation
  Board of Directors since May 2003.

- A copy of the *most recent* Trustee Board Report with the names of
  the Trustees attending. The report must also contain the meeting
  date and time.

Accompanying our review of the requested items will be one additional
member in good standing in NY Metro.

President Torrence, we are sure you will concur that for the well
running of any labor organization, any officer and/or member has the
right to review that labor organization's financial records at any
time. Thank you for your cooperation in this most important matter.

Please have the requested documents available for review by September
5, 2007, 10:00 AM.

Yours in Solidarity,

Charles R. Bembry, Jr.        Timothy Neilan        Michael Poole
Executive Secretary           Director, DVD         Coordinating VP
NY Metro                      NY Metro              NY Metro

cc: Wilfredo Figueroa, Treasurer
    File

CERTIFIED MAIL™

7007 0710 0000 4990 7409

U.S. POSTAGE
PAID
TEANECK, NJ
07666
AUG 21, 07
AMOUNT
$5.21
00058535-04

New York Metro Postal Union
350 W 31st Street
3rd Floor
New York, NY 10001
Wilnedo Figueroa

RETURN RECEIPT
REQUESTED

i0001$2726 C053

# AFFIDAVIT OF LARRY CARY EXHIBIT C



# NEW YORK METRO AREA POSTAL UNION, APWU AFL-CIO

350 WEST 31st STREET    NEW YORK, NY 10001    (212) 563-7553    Fax (212) 680-1039

**A Democratic Trade Union**

August 24, 2007

CLARICE TORRENCE
*President*
CLARENCE A. WALL, JR.
*Executive Vice President*
FRANKIE SANCHEZ
*Director of
Industrial Relations*
CHARLES R. BEMBRY, JR.
*Executive Secretary*
WILFREDO FIGUEROA
*Treasurer*
ABRIITTO DIVINE P. EL
*Director of Organization*

CERTIFIED MAIL – 7004 0550 0000 2085 8075

Charles R. Bembry, Jr.
Executive Secretary
50 Westervelt Place
Teaneck, NJ 07666

CERTIFIED MAIL – 7004 0550 0000 2085 8068

Timothy Neilan
Director, DVD
1002 Staghorn Lane
Stroudsburg, PA 18360

CERTIFIED MAIL – 7004 0550 0000 2085 8051

Michael Poole
Coordinating VP
39 Singer Avenue
Spring Valley, NY 10977

Re: Your Letter of August 21, 2007

Dear Brothers and Union Members:

Regarding your letter of August 21, 2007, please be advised that after careful consideration of your request I must deny it. You have asked the Union to produce an unprecedented amount of its books and records for a four year period without advancing any particular reason for why it is necessary as a union member for the Union to be put to the extraordinary expense of assembling such materials for your review.

As each of you occupies a union position, you are of course familiar with the rights and responsibilities each of you have under the local's constitution. After reviewing the local's constitution, I can find no special privilege granted you by dint of your position requiring that the local comply with your request.



Because Union's are membership organizations, federal law specifies the obligations of the union to file financial reports and it details when unions, if ever, must produce books and records of the description contained in your request to individual members. Moreover, the Department of Labor is authorized and responsible for overseeing the conduct of a union's financial affairs.

I believe the Union is fully compliant with its responsibilities under the law.

Fraternally yours,

Clarice Torrence

2

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by *(Please Print Clearly)*

B. Date of Delivery  8-27

C. Signature

X ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Charles R. Bembry
50 Westervelt Place
Teaneck, NJ    07666

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☒ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number *(Copy from service label)*

7004 0550 0000 2085 8075

PS Form 3811, July 1999    Domestic Return Receipt    102595-99-M-1789

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by *(Please Print Clearly)*

B. Date of Delivery  8/27/05

C. Signature

X ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Timothy Neilan
1002 Staghorn Lane
Stroudsburg, P.A.
18360

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☒ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number *(Copy from service label)*

7004 0550 0000 2085 8068

PS Form 3811, July 1999    Domestic Return Receipt    102595-99-M-1789

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by *(Please Print Clearly)*

B. Date of Delivery  8-27-05

C. Signature

X ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Michael Poole
39 Singer Avenue
Spring Vally, NY.
10977

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☒ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number *(Copy from service label)*

7004 0550 0000 2085 8051

PS Form 3811, July 1999    Domestic Return Receipt    102595-99-M-1789

# AFFIDAVIT OF LARRY CARY EXHIBIT D

NY Metro Area Postal Union
350 West 31st Street
New York, NY 10001
November 9, 2007

Ms. Clarice Torrence
President
NY Metro Area Postal Union
350 West 31st Street
New York, NY 10001

Re:   Second Request for NY Metro Area Postal Union Financial
      Information

Dear Ms. Torrence:

Once again, we are reminding you that, as it is our fiduciary right
and responsibility under the prevailing APWU National and NY Metro
Local Constitutions, and the United States Code, as elected officers
of the New York Metro Area Postal Union, we are requesting the
following documents for our review:

- All vouchers beginning from January 2006 to, and including, July
  27, 2007 for the following individuals.

      1.   Damon Branch
      2.   Theodore Nicholas
      3.   Tawanda Young
      4.   Gregory Wilson
      5.   Joann Flagler
      6.   Wayne Lewis
      7.   Giselle Ambursley
      8.   All Coordinators
      9.   All Sgts. At Arms

- A detailed record of services rendered, with monies spent, for
  Gary Schoichet, a consultant listed for the Union Mail.

- A break-down of *all* contributions, gifts, and grants totaling
  $28,139.00 as indicated in the most recent LM-2.

- A break down, with explanations, of all legal fees paid to Cary
  Kane, LLC from January 2006, to, and including, August 1, 2007.

- What services do the following companies perform for the union?
  Listed are their names and the amounts of money paid to them by
  NY Metro.

      1.   DeLage Landon Financial Services      $29,696.00
      2.   Beardon LLP Accounting Services       $63,437.00
      3.   Miceli and Koenig, CPA Firm            17,789.00
      4.   Tom Varecha Associates               $ 5,976.00
      5.   Working Advantage                    $ 7,970.00
      6.   Merkle Direct Marketing              $ 9,097.00

C. Torrence – 2
November 9, 2007

- Cell Phone Towers:  The information requested below is for the dates of May 2003 to the present:

    1.    Contracts(s) for the cell phone tower located on the roof at 350 W. 31st Street, New York, NY 10001.

    2.    Financial statements concerning the cell phone tower. **These statements must show the amount(s) of money received and how and where it is deposited, and the dates of the deposits.** Please understand that there is no financial, or other, information contained in the current, or previous, LM-2's addressing the cell phone tower. The union is renting space to the tower(s) provider(s)and the income is *not* being reported.

    3.    The dates and amounts of the deposits for the money received from the cell phone towers.

- As the recent LM-2 does not contain specific financial information for the Local 10 Building Corporation, please have available for our review all detailed information concerning *rent* received from each tenant and *all other* financial reports concerning the operation of Floors 1 – 8 for the Local 10 Building Corporation.

- All Minutes for all meetings of the Local 10 Building Corporation Board of Directors since May 2003.

- A copy of the *most recent* Trustee Board Report with the names of the Trustees attending.  The report must also contain the meeting date and time.

- A complete list of attendees to the APWU All-Craft Conference in Las Vegas, NV from November 5, 2007 through November 8, 2007. Also, the amounts of per-diem and substitution paid to each participant.  And, the date that the attendees' names were approved by the Executive Board to attend the All-Craft Conference.

President Torrence, we are sure you will concur that for the well running of any labor organization, any officer and/or member has the right to review that labor organization's financial records at any time.  Thank you for your cooperation in this most important matter.

C. Torrence - 3
   November 9,2007


Please have the requested documents available for review by November
16, 2007, 10:00 AM.

Yours in Solidarity,

Charles R. Bembry, Jr.          Timothy Neilan          Michael Poole
Executive Secretary             Director, DVD           Coordinating VP
NY Metro                        NY Metro                NY Metro
cc:   Wilfredo Figueroa, Treasurer
      File

estevurll T A
reck, NJ

TURN RECEIPT
REQUESTED

7007 0220 0000 0676 4504





U.S. POSTAGE
PAID
TEANECK, NJ
07666
NOV 08  0/
AMOUNT

$5.21
00058535-04

0000      10001

NY Metro Postal Union
350 W 31el Street
NY NY 10001
W. Figueroa

3

10001+2726 C063

# AFFIDAVIT OF LARRY CARY EXHIBIT E

Treasurer

**NEW YORK METRO AREA POSTAL UNION**
Affiliated with American Postal Workers Union AFL-CIO
350 WEST 31ST STREET
NEW YORK, N.Y. 10001

WE TRY TO BE LETTER PERFECT

Charles R. Bembry, Jr.
Executive Secretary
50 Westervelt Place
Teaneck, NJ 07666

UNCLAIMED

UNITED STATES POSTAGE
$05.21⁰
NOV 13 2007
0004600601
MAILED FROM ZIPCODE 10001
PITNEY BOWES
02 1A

7004 0085 0550 2085 8164

**CERTIFIED MAIL™**

---

11-16-07

11/26/07
12/7
12/11

WE TRY TO BE LETTER PERFE

DEC 2 6 2007

Treasurer

**NEW YORK METRO AREA POSTAL UNION**
Affiliated with American Postal Workers Union AFL-CIO
350 WEST 31ST STREET
NEW YORK, N.Y. 10001

Timothy Neilan
Director, DVD
1002 Staghorn Lane
Stroudsburg, PA 18360

NIXIE        180    CE 1        06 12/17/07
            RETURN TO SENDER
            UNCLAIMED
            UNABLE TO FORWARD
            *2445-18335-14-26

BC:  10001272699
|.|.|..||..|.||...|.|..|.||..||.|.|..|.||..|.||..||.|.||..|||

UNITED STATES POSTAGE
$05.21⁰
NOV 13 2007
0004600601
MAILED FROM ZIPCODE 10001
PITNEY BOWES
02 1A

7004 0085 0550 2085 5036

**CERTIFIED MAIL™**



# NEW YORK METRO AREA POSTAL UNION, APWU AFL-CIO

350 WEST 31st STREET     NEW YORK, NY 10001     (212) 563-7553     Fax (212) 680-1039

**A Democratic Trade Union**

CLARICE TORRENCE
*President*
CLARENCE A. WALL, JR.
*Executive Vice President*
FRANKIE SANCHEZ
*Director of*
*Industrial Relations*
CHARLES R. BEMBRY, JR.
*Executive Secretary*
WILFREDO FIGUEROA
*Treasurer*
ABRIITO DIVINE P. EL
*Director of Organization*

November 13, 2007

Certify Mail 7004 0550 0000 2085 8167

Charles R. Bembry, Jr.
Executive Secretary
50 Westervelt Place
Teaneck, NJ 07666

Certify Mail 7004 0550 0000 2085 5036

Timothy Neilan
Director, DVD
1002 Staghorn Lane
Stroudsburg, PA 18360

Certify Mail 7004 0550 0000 2085 5029

Michael Poole
Coordinating VP
39 Singer Avenue
Spring Valley, NY 10977

Re: Your Letter of November 9, 2007

Dear Brothers and Union Members:

Your letter of November 9, 2007 is a near mirror image of your letter of August 21, 2007, with the exception that you have now requested additional information. My response therefore will mirror that of my previous letter to you. Please be advised that after careful consideration of your request I must again deny it. You have asked the Union to produce an unprecedented amount of its books and records for a four year period **without advancing any particular reason for why it is necessary** as a union member for the Union to be put to the extraordinary expense of assembling such materials for your review.

9138-1



As each of you occupies a union position, you are of course familiar with the rights and responsibilities each of you have under the local's constitution. After reviewing the local's constitution, I can find no special privilege granted you by dint of your position requiring that the local comply with your request.

Because Union's are membership organizations, federal law specifies the obligations of the union to file financial reports and it details when unions, if ever, must produce books and records of the description contained in your request to individual members. Moreover, the Department of Labor is authorized and responsible for overseeing the conduct of a union's financial affairs.

However, those Trustees elected with the responsibility of reviewing and examining the financial transactions of this Union did so on October 29, 2007 and will be giving their quarterly report at the membership meeting of November 14, 2007.

I believe the Union is fully compliant with its responsibilities under the law.

Fraternally yours,


Clarice Torrence
President


Wilfredo Figueroa
Treasurer

9138-1

# AFFIDAVIT OF LARRY CARY EXHIBIT F(1)

# NEW YORK
# METRO AREA POSTAL UNION

# CONSTITUTION



affiliated with
American Postal Workers Union, AFL-CIO

Amended September 18, 2002



# CONSTITUTION
# NEW YORK METRO AREA
# POSTAL UNION

## PREAMBLE

Recognizing the fact that progressive benefits to the postal worker, the securing of beneficial legislation, a union shop, area bargaining, the right to strike, and the prompt solution of grievances are the key to better salary and working conditions, and recognizing that this is possible only through the organized effort of postal workers, we devote ourselves to the building of a democratic union in the United States Postal Service. We pledge ourselves to the formation of a single union of all postal workers affiliated with the American trade union movement.

## ARTICLE I
## Name

This local union, hereinafter referred to as the Union, shall be known as the NEW YORK METRO AREA POSTAL UNION, an affiliated Local of the American Postal Workers Union, AFL-CIO, hereinafter referred to as the National Union.

## ARTICLE 2
## Purpose and Aims

*Section 1.* The object of this Union shall be to unite the postal workers in the New York metropolitan area in a bona fide labor union for their social and economic advancement and mutual protection and welfare.

*Section 2.* The Union shall promote, protect, and champion the legitimate struggles of postal workers toward achieving economic well-being human dignity on the job, and their rights as workers and citizens. To this end, the Union shall strive for, among other goals, the complete elimination of political influence from the postal service and the establishment of seniority as the basis for advancement and preference.

## ARTICLE 3
## Membership

*Section 1.* All postal employees, except those holding supervisory positions, are eligible to apply for membership.

*Section 2.* No eligible employee shall be denied membership because of race, color, creed, sex, sexual orientation, nationality, handicap, political affiliation, age or religion.

*Section 3.* Applicants for membership must be submitted on forms furnished by the union for that purpose.

*Section 4.* All applications for membership shall be submitted to the Executive Secretary. The Executive Secretary shall refer any application, which does not comply with the requirements of the Union's Constitution to the Executive Board for review. A decision of the Executive Board to deny membership can be appealed and overruled by a majority vote at a membership meeting.

*Section 5.* Successful applicants shall become members and their dues become payable as of the first day of the month in which they are accepted.

*Section 6.* A rejected applicant may be proposed again after six (6) months have elapsed from the date of rejection.

*Section 7.* No postal employee holding membership in any organization whose aims and activities are injurious to proper aims and aspirations of postal employees or which acts as a deterrent to the proper organization of postal employees or their welfare, shall be eligible for membership

*Section 8(a).* Any member who retires

1

from the postal service may continue his or her good standing membership by continuing to pay the regular dues and assessments.

(b). Any member who accepts a supervisory, position in the postal service or leaves the employment of the postal service other than by retirement may, by paying an amount equal to the regular dues and any assessments duly levied have a right to continue membership or participation in such Union sponsored programs as the credit union, insurance and health plans, etc. He or she shall not, however, be considered a member in good standing nor shall have the right to hold office or have a voice or vote at any Union meeting or at any Union election.

Section 9. No disciplinary action taken by the US Postal Service which directly or indirectly resulted from a members duly authorized Union activity shall diminish in any way such member's right to retain full good standing membership and, for the purposes of this Constitution and By-Laws, he or she shall be deemed an employee of the Postal Service as long as good standing is retained.

Section 10(a). Timely payment of dues is required of all members.

(b). When for any reason the dues of a member who pays dues by check-off authorization are not checked off by the employer for any pay period(s), such member shall remain in good standing until thirty (30) days after the mailing to the member of a notice by certified mail return receipt informing him or her of their indebtedness. Failure to pay such dues after said notice shall cause the member to be in bad standing and dropped from the rolls.

(c) Any member who for any reason, including retired status or doing full time work for the union, does not pay dues by check-off authorization shall be responsible for paying his or her dues by the end of the calendar month for which they are due. Such member shall remain in good standing thirty (30) days after the mailing of notice informing him or her of indebtedness. Failure to pay such dues within said thirty (30) days shall cause the member to be in bad standing and dropped

from the rolls.

(d) A member's good standing status shall not be effected by reason of the fact that his or her paycheck for the payroll period in which his or her dues deductions are made insufficient to permit such dues deductions, by reason of illness, injury, pregnancy leave, lay-off, disciplinary suspension, lock-out or strike.

Section 11. A postal employee dropped from membership in the Union because of nonpayment of dues may be reinstated by re-applying for membership.

## ARTICLE 4
### Membership Rights and Responsibilities

Section 1. Each member in good standing has the right and responsibility to (a) attend meetings, (b) participate in discussion, (c) vote on issues, (d) nominate and vote for office, (e) be nominated upon fulfillment of eligibility requirements and hold office. (f) loyally support, build the Union and uphold its Constitution, (g) protect the rights of fellow member, and (h) foster trade unionism.

Section 2. No criticism, reflection, argument, debate, or discussion shall be allowed at any meeting of the Union or be published in any of its organs that touches upon any member's race, color, creed, sex, sexual orientation, nationality, handicap, political affiliation, age or religion

## ARTICLE 5
### Dues

Section 1. The regular dues of the union shall be nineteen dollars and twenty-nine cents ($19.29) per pay period of which six dollars and eighty-eight cent ($6.88) is a per capita tax to the national APWU. Further increases will be in accordance with Article 16 Section 2 of the National Constitution

Section 2. When postal workers receive a cost of living adjustment the Union dues shall be increased by one (1) percent of the

COLA adjustment. The one (1) percent increase shall be effective with the May 1982 COLA and shall apply to all future COLA adjustments, excluding $3,619 COLA accumulated through the 1978-1981 National Agreement.

*Section 3.* Included in the monthly dues shall be payment for a subscription to the Union's official publication "The Union Mail"

## ARTICLE 6
### Membership Meetings

*Section 1.* The regular membership meeting of this Union shall be held on the third Wednesday of each month-except that there shall be no meetings during the months of July, August and December. The membership by a two-thirds (2/3) vote of those voting at a regular membership meeting or the Executive Board can change the date or time of a specific regular membership meeting. Notification of the change date or time shall be sent to each station for posting at least seven (7) days prior to such meeting.

*Section 2.* A special membership meeting may be called for specifically stated purposes as follows: (a) by the President or (b) by the Executive Board or (c) by a majority vote of the membership present at a regular membership meeting or (d) by petition signed by 10% of the members in good standing. Such petition must include members in good standing from four (4) or more stations

*Section 3.* Such special meeting shall be held within fifteen (15) days of the action taken pursuant to Section 2. The President shall be responsible for the necessary arrangements and the posting of notice of such meeting. stating date, time, place and purposes, at each station at least five (5) days prior to stated date, except in case of emergency. No business, other than that stated in the original motion or petition, shall be transacted at such meeting.

*Section 4.* Seventy-five (75) members shall constitute a quorum for the transaction of

Union business at any regular or special membership meeting

*Section 5.* The order of business at regular meetings shall be as follows: 1. Call to order 2. Roll call of officers 3. Reading and adoption of minutes of previous membership and Executive Board meetings 4. Communications 5. Report of officers and committees 6. Nominations (February meeting) 7.Unfinished business 8. New business 9. Good and welfare 10. Adjournment. The order of business may be transposed, reopened or suspended by a two-thirds (2/3) vote of the members present.

*Section 6.* Robert's Rules of Order shall be the authority on all questions of procedure not covered by the Constitution, and a copy shall be on hand at membership and Executive Board meetings.

## ARTICLE 7
### Officers and Duties

*Section 1.* The elected officers of the Union shall consist of a President, Executive Vice-President, Director of Industrial Relations, Executive Secretary, Treasurer, Director of Organization, Coordinating Vice President, Legislative Director, Director of the Bronx Division, Assistant Director of the Bronx Division, Director of the Clerk Division, Assistant Director Clerk Division, Director of the Mail-Handler Division, Director of the Motor Vehicle Division, Director of the Maintenance Division, Assistant Director Maintenance Division, two (2) Vice-Presidents, three (3) Sector Aides, Director Morgan P&DC, Assistance Director Morgan P&DC, Director Dominick V. Daniels Facility, Assistant Director Dominick V. Daniels Facility, and Director New Jersey International and Bulk Mail Center, and Assistant Director New Jersey International and Bulk Mail Center. The above named elected officers shall, be automatic delegates to all national conventions.

*Section 2.* The President shall preside at all membership and Executive Board meetings of the Union. He or she shall, with

3

the approval of the Executive Board, appoint the Editor, the Managing Editor, the Director of Human Relations, Chief Stewards, Coordinators, Craft Representatives, Sergeant-at-Aims, all committees and committee chairpersons with the exception of chairperson of Election Committee. The President shall ex-officio, be a delegate to all conventions, a member of all committees be chairperson of the Grievance Committee and shall process all grievances.

The President shall countersign all checks drawn on the Union treasury, examine all contracts to which the Union is a party, and sign all contracts and other obligations of the Union. The President shall have the authority, with the approval of the Executive Board, to fill any vacancy in any office. The President shall be responsible for the effective enforcement of the provisions of this Constitution and By-Laws and for ensuring that the rights of the members as individuals and as a group, as set forth in this Constitution and By-Laws and in the National Constitution, or as provided in collective bargaining agreements. are duly protected and enforced. The President shall have the power and authority reasonably necessary for such purposes. The President shall receive an annual salary of $55,022.82 in addition to his or her annual postal base pay. When postal employees receive a raise, he or she shall receive the same percentage raise applied to the postal portion of his or her salary.

*Section 3.* The Executive Vice-President shall assist the President in the handling of grievance matters and such other duties as may be assigned by the President. The Executive Vice President shall be a member ex-officio, of all committees with the exception of the election committee and shall preside at the Executive Council. The Executive Vice-President shall receive an annual salary of $39,989.71 in addition to his or her annual postal base pay. When postal employees receive a raise, he or she shall receive the same percentage raise applied to the postal portion of his or her salary.

*Section 4.* The Director of Industrial Relations shall assist in grievance work and under the direction of the President such other duties as may be assigned by the President. The Director of Industrial Relations shall receive an annual salary of $32,868.57 in addition to his or her annual postal base pay. When postal employees receive a raise, he or she shall receive the same percentage raise applied to the postal portion of his or her salary.

*Section 5.* The Executive Secretary, hereinafter referred to as the Secretary, shall receive and answer all communications to the Union, communicate all official notices to officers and members of the Union- The Secretary shall keep a correct and complete record of the meetings and proceedings of the Union and report same at membership meetings. The Secretary shall supervise the operation of the union office and handle the administration and records of the New York Metro Area Postal Union Group Insurance Fund. At the close of the official term of office, the Secretary shall turn over to his or her successor all books, documents and other properties in his or her possession belonging to the Union. The Secretary shall also, at the direction of the President, prepare and issue such publicity that may be necessary and such other duties as may be assigned by the President. The Secretary shall receive an annual salary of $31,032.97 in addition to his or her annual postal base pay. When postal employees receive a raise, he or she shall receive the same percentage raise applied to the postal portion of his or her salary.

*Section 6.* The Treasurer, shall be the custodian of all Union funds, receive all monies paid into the Union and issue proper receipts for same. He or she shall keep a regular systematic record of all accounts, pay all bills and vouchers properly signed by the President or Executive Vice-President and Secretary, and submit financial reports to the membership meetings. The Treasurer shall serve on all committees whose basic functions include the receipt or expenditure of funds. He or she shall maintain a correct account

4

between the Union and its members and shall see that the steward's remittances are received when due. He or she shall be responsible for the maintenance of the Union mailing list; he or she shall be responsible for providing, bimonthly, an updated union mailing list to the Executive Secretary, the Editor and Managing Editor. He or she shall furnish the Executive Secretary during the month of February in each election year with a list of members in good standing eligible to vote. He or she shall also handle the funds of the New York Metro Area Postal Union Group Insurance Plan, The Treasurer shall be bonded, such bond to remain in effect until a successor is installed in office and all records have been surrendered. The cost of such bond shall be borne by the Union. At the close of term of office he or she shall submit a financial report and turn over to the successor all books, records, documents and other properties in his or her possession belonging to the Union. Under the direction of the President, the Treasurer shall perform such other duties as may be assigned by the President. He or she shall receive an annual salary of $31,032.97 in addition to his or her annual postal base pay. When postal employees receive a raise, he or she shall receive the same percentage raise applied to the postal portion of his or her salary.

Section 7. The Director of Organization shall, work under the direction of the President. The Director of Organization shall receive an annual salary of $31,032.97 in addition to his or her annual postal base pay. When postal employees receive a raise, he or she shall receive the same percentage raise applied to the postal portion of his or her salary.

Section 8. The Coordinating Vice-President shall, under the direction of the President, be assigned such duties in the office and in the field as may be necessary, and may also be assigned to hearings and submit reports and recommendations relative to such matters. He or she shall, under the direction of the President, be responsible for distribution of union organization literature and such other duties as may be assigned by

the President. The Coordinating Vice-President shall receive an annual salary of $5,l00.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 9. The Legislative Director shall, under the direction of the President, assist in legislation and such other duties as may be assigned by the President. The Legislative Director shall receive an annual salary of $3,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 10. The Director of the Bronx Division shall be an employee of the Bronx Post Office and shall be responsible for organization and membership activities in the Bronx Post Office. He or she shall also, under the direction of the President, deal when necessary with the officials of the Bronx Post Office on union matters and perform such other duties as may be assigned by the President. The Director of the Bronx Division shall receive an annual salary of $3,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 11. The Assistant Director of the Bronx Division shall be an employee of the Bronx Post Office and shall, under the direction of the President. assist the Director of the Bronx Division in all organization and grievance work and perform such other duties as may be assigned by the President. The Assistant Director of the Bronx Division shall receive an annual salary of $2,600.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work

5

hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 12. The Director of the Clerk Division shall, under the direction of the President, be responsible for organization and processing the particular grievances of that craft and such other duties as may be assigned by the President. The Director of the Clerk Division shall receive an annual salary of $3,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 13. The Assistant Director Clerk Division shall, under the direction of the President, assist the Director of the Clerk Division and perform such other duties as may be assigned by the President. The Executive Director of the Clerk Division shall receive an annual salary of $3,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 14. The Director of the Mailhandler Division shall, under the direction of the President, be responsible for organizing in the Mailhandler Craft, processing the particular grievances in that Craft and perform other duties as may be assigned by the President. The Director of the Mailhandler Division shall receive an annual salary of $3,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 15. The Director of the Maintenance Division shall, under the direction of the President, be responsible for organizing in the Maintenance Craft, processing the particular grievances in that craft and perform

such other ~duties as may be assigned by the President. The Director of the Maintenance Division shall receive an annual salary of $3,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 16. The Assistant Director Maintenance Division shall, under the direction of the President, assist the Director of the Maintenance Division and perform such other duties as may be assigned by the President. The Executive Director of the Maintenance Division shall receive an annual salary of $2,600.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 17. The Director of the Motor Vehicle Division shall, under the direction of the President, meet with the Chief Stewards and Shop Stewards whose function it is to establish procedures, working conditions, safety and health and other standards relating to the Motor Vehicle Service, which are not in conflict with the established policy of the Local or National Union and perform such other duties as may be assigned by the President. The Director of the Motor Vehicle Division shall receive an annual salary of $3,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 18. The two (2) Vice-Presidents shall, under the direction of the President, aid Stewards in the adjustment of grievances and fulfill such other duties as may be assigned by the President. They shall receive an annual salary of $3,300.00 each, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on

union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 19. The three (3) Sector Aides, under the direction of the President, shall be assigned such duties in the office and field as may be necessary and perform such other duties as may be assigned by the President. They shall receive an annual salary of $2,600.00 each, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 20. The Director of the Morgan P&DC Facility shall coordinate and direct all union activities at the Morgan P&DC Facility including processing of grievances and building the Union under the direction of the President and perform such other duties as may be assigned by the President. The Director of the Morgan P&DC Facility shall be an employee of the Morgan P&DC Facility and receive an annual salary of $4,500.00, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 21. The Assistant Director Morgan P&DC Facility shall be an employee of the Morgan P&DC Facility and shall, under the direction of the President, assist the Director of the Morgan P&DC Facility in all organization and grievance work and perform such other duties as may be assigned by the President. The Assistant Director of the Morgan P&DC Facility shall receive an annual salary of $3,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 22. The Director of the

Dominick V. Daniels Facility shall coordinate and direct all union activities at the Dominick V. Daniels Facility including processing of grievances and building the Union under the direction of the President and perform such other duties as may be assigned by the President. The Director of the Dominick V. Daniels Facility shall be an employee of the Dominick V. Daniels Facility and receive an annual salary of $3,300.00, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 23. The Assistant Director Dominick V. Daniels Facility shall be an employee of the Dominick V. Daniels Facility and shall, under the direction of the President, assist the Director of the Dominick V. Daniels Facility in all organization and grievance work and perform such other duties as may be assigned by the President. The Assistant Director of the Dominick V. Daniels Facility shall receive an annual salary of $2,600.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 24. The Director of the New Jersey International and Bulk Mail Center shall coordinate and direct all union activities at the New Jersey International and Bulk Mail Center including processing of grievances and building the Union under the direction of the President and perform such other duties as may be assigned by the President The Director of the New Jersey International and Bulk Mail Center shall be an employee of the New Jersey International and Bulk Mail Center and receive an annual salary of $3,300.00, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

7

Section 25. The Assistant Director of New Jersey International and Bulk Mail Center shall be an employee of the New Jersey International and Bulk Mail Center and shall, under the direction of the President, assist the Director of the New Jersey International and Bulk Mail Center in all organization and grievance work and perform such other ditties as may be assigned by the President. The Assistant Director of the New Jersey International and Bulk Mail Center shall receive an annual salary of $2,600.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

Section 26. Sick leave and annual leave benefits shall be accrued at the same rate as they would have accrued had the full-time officer continued to work in the Postal Service. Requests for sick leave above and beyond that accrued must be supported by legally permissible documentation and approved by the president with the right to appeal a denial of sick leave to the Executive Board.

Section 27. All full-time officers are responsible for his or her share of contributions to his or her retirement plans.

Section 28. In the absence or incapacity of the President or in case of a vacancy in that office, the Executive Vice-President or, if unavailable, the Director of Industrial Relations, shall perform the duties of the President. If neither the Executive Vice-President nor the Director of Industrial Relations is available, a vacancy in the office of the President shall be filled by an election requiring two-thirds (2/3) vote of the Executive Board members, voting at the next Executive Board meeting. Such election shall be advertised in advance.

Section 29. All full time officers shall be covered by the American Postal Workers Union Retirement Plan. Contributions shall be made by the officers and the Union in

accordance with provisions of the American Postal Workers Union Retirement Plan.

Section 30. When the Postal Service does not contribute its normal share for any union officer, because of union activity, to the life insurance and health benefits plans, the Union will contribute the employer's share while the officer will contribute the normal employee's share.

Section 31. Officers are responsible for his or her share of social security taxes on salary, substitution and /or equivalent reimbursement.

Section 32. Delegates to the national and state conventions shall be paid the following expenses: (a) transportation, (b) cost of hotel accommodations, (c) all registration fees, (d) per diem expenses for meals and other incidentals as approved by the Executive Board, (e) necessary substitution or equivalent reimbursement.

Section 33. Any officer or steward absent from three (3) successive membership, Executive Council, and/or Executive Board meetings, unless sick or on leave, and giving due notice of the fact to the Secretary on or before the meeting date, shall be given written notice that due to their delinquency, they are subject to removal pursuant to article 15 of APWU's National Constitution and bylaws.

Section 34. Officers shall not engage in any private business activities in which the Union, its members, or the postal service are interested parties.

Section 35. Every part-time field officer, coordinator, chief steward or craft representative of the union who receives a salary shall be required to spend a sufficient amount of time in the office or in the field on union business to cover his or her union salary at the appropriate rate prior to any claim for equivalent reimbursement.

A. In the event such union official fails to spend the necessary time in the

office or in the field on a monthly basis, payment for any claim for necessary substitution or equivalent reimbursement shall be held until that field officer, coordinator, chief steward or craft representative makes up the time.

*B.* A field officer, coordinator, chief steward or craft representative shall be excused from this obligation in the event he/she is being carried on authorized leave from his/her job with the U. S. Postal Service. The officer's time shall be monitored by the president, Treasurer or president's designees.

### ARTICLE 8
### Board of Trustees

*Section 1.* The Board of Trustees shall consist of five (5) members in good standing elected at the same time pursuant to the same procedures as are local officers.

*Section 2.* The Trustees shall have general supervision over the property and funds of the Union. They shall examine all financial records quarterly (January, April, July and October) and submit reports to the following membership meetings.

*Section 3.* They shall, at their discretion, examine and investigate any financial transaction or situation and report their findings to the Executive Board, or the membership meetings, as they deem desirable.

*Section 4.* They shall determine the amount of bonds of officers and stewards of the Union.

*Section 5.* The Board of Trustees shall make proper provision for the safety of the property of the Union.

*Section 6.* The Chairperson of the Board of Trustees shall be appointed from among them by the President.

### ARTICLE 9
### Miscellaneous Positions

*Section 1.* The President shall

determine the number of assistant Sergeants-At-Arms on an as needed basis. The Sergeant-at-Arms shall be appointed by the President with the approval of the Executive Board. He or she shall monitor Membership and Executive Council meetings, report to the President those present without proper credentials, maintain decorum, see to the proper display of the American flag and perform such other duties as are necessary for the proper conduct of Union meetings. The Sergeant-at-Arms shall maintain the Attendance Register at each membership meeting and it shall be the responsibility of each attending member to sign the Register. At the adjournment of the meeting, the Register shall be turned over to the Secretary who shall close the meeting's list with his/her signature. This Register shall be the only means of determining meeting attendance and shall be used for no other purpose. No change can be made in the list after the Secretary has closed it with his or her signature. The Sergeant-at-Arms shall receive an annual salary of $650.00, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

*Section 2.* The Editor shall be responsible for the regular publication of the Union's official newspaper under the direction of the President and the Secretary and such other duties as may be assigned by the President. He or she shall receive an annual salary of $3,300.00, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

*Section 3.* The Managing Editor shall assist the Editor, be responsible for the mailing and business arrangements of the paper and such other duties as may be assigned by the President. The Managing Editor shall receive an annual salary of $2,500.00 plus substitution for lost postal pay and/or equivalent reimbursement for

9

# AFFIDAVIT OF LARRY CARY EXHIBIT F(2)

authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

*Section 4.* A Chief Steward shall be utilized in terminals where several stewards are on the same tour. A Chief Steward shall be directly responsible to the Vice-President in charge of the Terminal or Station. In addition to all other duties and responsibilities of a steward, the Chief Steward shall coordinate the stewards in his or her section, tour, or division. The Chief Steward shall assist in handling of grievances and implementation of all Union policies, under the direction of the President, and perform such other duties as may be assigned by the President. Chief Stewards shall receive an annual salary of $2,300.00 plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

*Section 5.* Coordinators shall coordinate the Stewards in the stations assigned to them. They shall assist in adjusting grievances and disciplinary actions. Coordinators shall also be available to inspect any adverse physical conditions whenever called upon. Each Coordinator shall be required to visit each assigned station as often as required by the President. They shall be responsible to the President and also perform such other duties as may be assigned by the President. Coordinators shall receive an annual salary of $2,300.00, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

*Section 6.* The Director of Human Relations shall direct programs of community and social services as they pertain to postal workers and such other duties as may be assigned by the President. The Director of Human Relations shall receive an annual salary of $2,500.00, plus substitution for lost

postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

*Section 7.* Craft Representatives shall assist in the particular problems of their craft in the Station, Facility or Terminal in which they are appointed, under the direction of the President They shall also perform such other duties as may be assigned them by the President. The Craft Representatives shall receive an annual salary of $650.00, plus substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours. Total substitution and equivalent reimbursement shall not exceed eight (8) hours in a given day.

## ARTICLE 10
### Executive Board

*Section 1.* The Executive Board shall consist of the officers of the Union named in Article 7, Section 1.

*Section 2.* Subject to the provisions of this Constitution and By-Laws and of the National Constitution and the delegations of authority therein provided, the supreme authority in this Union shall be vested in the membership acting through membership meetings or by referendum; between the membership meetings such authority shall be vested in the Executive Board.

*Section 3.* The Executive Board shall meet once a month and at the call of the President. The President shall be required to call a meeting of the Executive Board within seven (7) days after written request signed by a majority of the Executive Board.

## ARTICLE 11
### Executive Council and Stewards

*Section 1.* The Executive Council shall consist of the officers of the Union and all of its Stewards, Chief Stewards, Coordinators,

Craft Representatives, the Editor, the Managing Editor, the Director of Human Relations, the Sergeant-at-Arms and members of the Board of Trustees.

*Section 2.* The Executive Council shall meet prior to the regular membership meeting at the call of the President.

*Section 3.* The effective representation of the members of the Union, the enforcement of their rights under collective bargaining agreement and under the Local and National Constitutions, and the capacity of the Union and its officers to carry out their assigned responsibilities depend, to a major extent, on the proper functioning of a sound steward system.

*Section 4.* The maintenance of an effective, efficient steward system with reasonable representation for each segment of the membership shall be a primary responsibility of the President. To that end, the President, with the approval of the Executive Board, shall designate those pay location(s) of employees of the postal service which shall be entitled to elect and be represented by a steward. The pay location(s) may be a station, a division, a section, a tour, or any part or combination thereof or any other grouping of employees which will most efficiently and effectively service the membership. The controlling factors in determining appropriate steward pay locations shall be the ease of communication within the group and the most effective representation of employees.

*Section 5.* Stewards shall be elected for a three (3) year term effective with the 1982 election, by and from their respective pay location(s), beginning the calendar week following the October regular membership meeting. The Election Committee shall adopt, subject to the approval of the Executive Board; the rules for the conduct of Steward elections.

A. If a designated pay location is vacant for a ninety (90) day period after the posting of a vacancy, the President shall have the option, in his or her sole discretion, of eliminating the designated pay location and assigning a steward from another pay location to also represent the employees at the pay location so eliminated.

*Section 6.* Stewards, within their division, station, section, or assigned territories, shall build the Union, diligently represent the members in handling grievances, publicize and carry out the Union's policies, maintain the Union's bulletin boards and assist the members wherever possible in their Postal and welfare problems. They shall submit all unresolved grievances in writing to the President or his or her designee. They shall, in addition, perform such other duties as may be assigned by the President.

*Section 7.* It shall be the obligation of all elected and appointed officers and stewards to forward to the Treasurer all monies collected within seven calendar days after such monies are collected.

*Section 8.* Stewards will be paid quarterly, according to the number of members they represent: 1-39 members - $75; 40-59 members - $100; 60-79 members - $125; 80 or more members - $150.

*Section 9.* The President may remove any steward for just cause. The President must notify the steward, stating the reason in writing, by certified mail, return receipt requested. Any removed steward may appeal his or her removal to the Executive Board, either in writing or in person, not later than fifteen (15) days of when notified, or at the following Executive Board Meeting, which ever is later. It shall require a majority of those Executive Board members voting to reinstate a removed steward.

*Section 10.* The President shall have the power to appoint a steward to fill any vacancy until the expiration of the term.

ARTICLE 12
Nominations and Elections

*Section 1.* Prior to each election year,

11

the President shall appoint, with the approval of the Executive Board, an Election Committee of three members and two alternates, none of whom may be a candidate for or the holder of any elective or appointive position in the Union. The Election Committee shall properly meet, elect from among themselves a chairperson and secretary and draw up proposed Rules for the conduct of the election. The Rules shall be designed to provide a reasonable opportunity for all members in good standing to vote and for the candidates, personally or by their representatives, to observe the election procedures, and to ensure the secrecy of the ballot. Any member who feels aggrieved in connection with the conduct of the local election shall file his or her objection in writing to the election committee. Such objection shall be sent by certified mail, postmarked within seventy-two (72) hours after the date that the objection arises. (For the purpose of this article, the term "election" shall include nominating procedures.)

Section 2. A copy of the proposed election rules shall be posted on all bulletin boards, printed in the union newspaper, and made available to any member in good standing at the union office on or before the first regular work day after January 10th of each election year.

Section 3. The Election Committee shall adopt the rules to govern the election on or before January 26th of the election year. These rules, and any subsequent modification of the rules, if practicable, shall be posted on all union bulletin boards and provided to all candidates by mail.

Section 4. A copy of the adopted Rules shall be available to any member in good standing at the Union office on and after the first day of February of the election year.

Section 5. Nominations for all officers and trustees shall be made at the February membership meeting of the election year.

Section 6(a). Any member in good standing shall be eligible to be a candidate for

officer or convention delegate provided he or she has been a member in good standing continuously for one (1) year prior to the nominating meeting, with the following exceptions.

(b). Any member who has an application pending for a supervisory position in the Postal Service through participating in the PASS program or other similar programs shall be ineligible to be a candidate for or hold any elective or appointive office or position in the Union including, but not limited to, chief steward, steward, coordinator or craft representative.

(c) Any employee eligible to be a member of the union who voluntarily holds a managerial, supervisory or EAS position with responsibility for issuing or recommending discipline, or applying or interpreting the national agreement for the equivalent of a two week period in a year shall be ineligible to hold to hold office in the union or be a delegate to any convention, so long as the employee continues to serve in such position and for a period of one (1) year from the time the employee vacated such position.

(d) Any member who has submitted an application for a managerial, supervisory or EAS position with responsibility for issuing or recommending discipline or for applying or interpreting the national agreement shall withdraw such application prior to acceptance of nomination for any office in the union.

Section 7(a). Any member in good standing can nominate an eligible member. Nominees may announce acceptance in person at the nominating meeting or by written statement submitted to the Election Committee. The Election Committee will inform any member nominated but not present at the meeting of his or her nomination and advise him or her of the deadline for accepting the nomination.

(b). All unopposed candidates shall be elected by acclamation. Their names will not appear on the ballot.

Section 8. The term of office shall be three (3) years effective with the March 2000

election. The trustees and officers, with the exception of Craft Division officers, shall be elected by the membership of the Union at large. The Craft Division officers shall be elected by and from the members of their respective crafts.

*Section 9.* The election of officers and trustees shall be held by secret mail referendum. The Election Committee, shall employ the services of an experienced, independent organization to conduct the election, count and tally the ballots and report the results thereof in writing to the Election Committee immediately after the balloting has been completed. Write-in votes shall not be counted.

*Section 10.* The secretary shall certify and deliver during the month of February of each election year, the names and addresses of all members in good standing to the election committee. The Election Committee shall deliver the list to the organization employed to conduct the election. Such list shall be available to any candidate or their representative, during the first calendar week in March of the Election year at the office of the Union for the sole purpose of checking the accuracy of such list. Any objection to the accuracy of the list shall be made in writing to the Election Committee by registered mail postmarked not later than March 10th of the election year. Not later than March 15th of the election year, the Election Committee shall certify its approved list and make available at the Union office for the sole purpose of checking by any candidate or his or her representative.

*Section 11(a).* The order in which the names of the candidates for office shall appear on the ballot for the office designated shall be determined by drawing the names from a receptacle in the presence of the candidates or their duly authorized representatives, and each name arranged on the ballot under their respective titles, in order drawn.

*(b).* Whenever a group of candidates representing at least sixty percent (60%) of the offices to be filled desire to run

together as a slate by having their names grouped together on the ballot, they shall notify the Election Committee. The names of candidates to be grouped on the slate, accompanied by the signatures of the nominees, shall be submitted to the Election Committee.

*(c).* If more than one group makes such a request, the position on the ballot shall be determined by the number of candidates on the slate. The group filing for the greater number of candidates shall be entitled to receive the first position on the ballot. The next greater number of candidates filing as a group shall receive the second position on the ballot, etc.

*(d).* Whenever two or more groups file the same number of candidates for office, the group filing with the larger number of incumbents shall be entitled to receive the first position on the ballot. In the event there is more than one additional slate of candidates, there shall be a drawing under the supervision of the Election Committee for the other positions on the ballot.

*(e).* When a group of candidates qualifies as a slate, the ballot shall be set up so as to permit a voter to cast his vote by marking a single cross at the top of the slate of candidates of his/her choice.

*Section 12.* Each candidate may designate one (1) member in good standing to be a watcher, at no expense to the Union.

*Section 13.* Prior to the election, the Secretary shall circulate sample ballots for posting in all stations, these sample ballots shall be so marked and shall be of a color other than that of an official ballot.

*Section 14.* No later than March 30th of the election year, the Election Committee shall require the independent organization employed for such purpose to mail out the ballot to each good standing member at his or her last known home address. Accompanying such ballot shall be a notice advising the member of the last date on which the voted ballot has to be mailed back in order to be counted. Such date of return mailing shall be

13

·at least twenty (20) days after the date on which the ballots are mailed.

Section 15. Any candidate or his or her authorized representative may, in the course of sorting and counting of the ballots, challenge the validity of any ballot stating the reason for the challenge. The Election Committee shall decide the challenge.

Section 16. The Election Committee shall declare the candidate who receives the plurality of the valid votes as the duly elected officer to that position.

Section 17. Decisions of the Election Committee may be appealed pursuant to Article 12, Section 8 of the National Constitution and By-laws.

Section 18. All ballots, tally sheets and other election records shall be preserved by the Election Committee for at least one year after all
appeals have been exhausted, at the Union office.

### ARTICLE 13
### Convention Delegates

Section 1. The Election Committee shall adopt Rules for the election of convention delegates, which shall embody as closely as practicable the procedures for nomination and election of officers, except that the election shall be by secret ballot on the day of and at the place of membership meeting, after at least fifteen (15) days notice mail to each good standing member at his or her last known home address. To be eligible, members must meet the requirements of Article 12, Section 6.

Section 2. Not less than three (3) months prior to the opening date of any convention the number of delegates to represent the Union shall be determined by a regular membership meeting.

Section 3. The President shall have the authority, to fill any vacancy in any national convention delegation. The President shall have the authority to fill any vacancy in any state convention delegation with elected alternate delegates.

### ARTICLE 14
### Committees

Section 1. There shall be the following standing committees: (a) Membership, (b) Grievance-Seniority, (c) Constitution, (d) Part-Time Flexibles, (e) Legislative Publicity, (t) Editorial Board, (g) Good and Welfare.

Section 2. A committee may be established by the President at the direction of the Executive Board or the membership meeting.

Section 3. All members in good standing shall be eligible to serve on any committee and may apply to the President for Committee Membership.

Section 4. Committee reports shall be made at Membership Meeting, except a report of the Constitution Committee recommending an amendment shall first be made to the Executive Board.

### ARTICLE 15
### Union and Membership Protection

Section 1. The following shall constitute offenses the commission of which shall subject any officer or member of the Union to disciplinary action as Set forth herein: (a) Violating any provision of the Constitution or failure to perform duties or functions specified or required herein; (b) Engaging in a movement which has for its purpose the fostering of a rival organization; (c) Violating the right of members to be free from discrimination on the basis of race, color, creed, sex, sexual orientation, nationality, handicap, political affiliation, age, religion or national origin; (d) Engaging in conduct harmful to the Union, damaging the Union's capacity to properly represent and service its members, or otherwise adversely affecting the Union in carrying out its obligations or

14

exposing the Union to civil liability; (e) Joining or lending active support to any organization or movement whose purpose and objectives are contrary to the fundamental principles of the Government of the United States of America; (f) An officer or member found guilty of any of the foregoing after the filing of charges and the holding of hearings and other procedures as prescribed in this Article may be disciplined by probation, suspension, expulsion, or other appropriate disciplinary action.

Section 2(a). The entire Executive Board or portion thereof shall have jurisdiction to hear and determine any and all charges under this Article.

(b). All charges shall be in writing signed by the accuser and shall be sufficiently explicit so as to inform the accused of the nature of the offense with which the accused is charged.

(c). Except in cases of suspensions or expulsion for nonpayment of dues or per capita, no disciplinary action shall be taken for violation of any of the provisions of this Constitution until the accused individual or a subordinate body has been accorded the following procedures.

(d). Proceedings under this Article may be initiated by any member by filing charges with the Secretary.

(e). The Secretary shall promptly transmit by certified mail or express mail, with all options to include a return receipt, a copy of the charges to the accused at his or her last known address. Copies thereof shall also be transmitted to the National Secretary-Treasurer. Accompanying the charges shall be written notice of the time and place of the hearing, which shall be held not less than one (1) week after the date of mailing of the notice. In the event of a trial board being appointed pursuant to Section (2), such notice of hearing shall be given to the accused by the committee.

(f). The accused shall be accorded a full and impartial trial, with the right to appear personally and be represented by any member of this Union, but whether the accused shall be represented by an attorney in such trial shall be left to his or her own discretion.

(g). Hearings may be held on a charge notwithstanding the failure of the accused, after being given notice thereof pursuant to the provisions of this Article to appear there at.

(h). Any decision or disposition of charges by the entire Executive Board or portion thereof shall be reduced in writing and submitted as a report to the Secretary of the local union, including a synopsis of the testimony introduced at the trial, together with the verdict "guilty" or "not guilty" and the recommended disciplinary action, if any. Upon receiving the report the Secretary shall read it at the next regular union membership meeting and, in the event of a "guilty verdict, submit first the question of sustaining the report as to guilt or innocence and if guilt is determined, then the question of accepting or rejecting the recommended disciplinary action.

Section 3(a). Any person or body against whom disciplinary action has been taken or whose charges have been dismissed in whole or in part shall have the right to appeal (1) to the President, (2) to the National Executive Board and (3) to the National Convention.

(b). Appeals shall be made within a reasonable time not to exceed thirty (30) days from the date that notice of disposition of charges is received; provided, however, that the appellate body may, at its discretion, extend such time for appeal if circumstances so warrant. Appeals shall be in writing and shall state the basis of the appeal. The appellant shall be permitted to present such appeal in person before any appellate tribunal, provided, however, that in the case of an appeal to a National Convention, the appellant shall be limited to appearance before the Convention Committee established to deal with appeals unless such appeals committee or the convention itself determines to permit a personal appearance before the Convention.

(c). Individuals against whom disciplinary action has been taken shall be obliged to exhaust all remedies provided for in this Article before resorting to a court of law or other tribunal.

15

### ARTICLE 16
### Referendum

*Section 1.* Any motion, resolution, or amendment rejected in whole or in part at a regular or special membership meeting may be submitted to referendum vote of the general membership. A petition signed by fifteen percent (15%) of the members in good standing shall be sufficient to initiate such action.

*Section 2.* Before such a petition may be circulated and prior to the next regular membership meeting, the Secretary must be notified by registered mail and be furnished with a copy of the proposed petition which shall include the question to be voted on. The Secretary shall advise the petitioner, within three (3) days of receipt of copy of petition, of the number of members in. good standing at the time of the previous meeting.

*Section 3.* The petition, properly signed, must be submitted to the Secretary no later than the day of the membership meeting next succeeding the meeting at which notification was accepted.

*Section 4.* The Secretary shall read the petition to the membership meeting. The President shall employ an independent outside ballot association which shall, within sixty (60) days, conduct the referendum, count and tally the ballots, and declare the results in a certified report submitted to the President and Secretary immediately following the completion of the referendum.

*Section 5.* All questions other than constitutional amendments shall be decided by a majority vote of those voting.

*Section 6.* There shall be included in the mailing of the ballots one (1) argument, not to exceed one thousand (1000) words, on each side of the question at issue.    In the event more than one argument is submitted to represent one side, they shall be returned to the senders for condensation into one (1) brief. The final arguments shall be printed at Union

cost and must be in the hands of the Secretary at least three (3) weeks prior to the date of the referendum vote.

*Section 7.* No motion, resolution, or amendment adopt by referendum vote can be repealed or amended within six (6) months after adoption.

### ARTICLE 17
### Amendments

*Section 1.* Proposed amendments to this constitution (a) may be submitted in writing to the Secretary, signed by at least fifteen percent (15%) of the members in good standing or (b) may be submitted to the Secretary at a membership meeting by a majority vote of the Executive Board.

*Section 2.* Proposed amendments shall require readings at two (2) consecutive membership meetings, shall be published in The Union Mail, and shall be advertised as part of the order of business and voted on at the second meeting.

*Section 3.* For adoption, the amendments shall require approval of two-thirds (2/3) vote of the members voting thereon at the second meeting.

*Section 4.* Any amendment which would increase membership dues shall be voted upon separately and, for adoption, shall require approval by a majority of the members voting thereon by secret ballot.

16