UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
CHARLES   R.   BEMBRY   and
MICHAEL POOLE,

                 Plaintiffs,

- against -

NEW   YORK   METRO   AREA
POSTAL   UNION,   AMERICAN
POSTAL   UNION,   AFL-CIO,   and
CLARICE TORRENCE,

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

08-CV-02369 (VM) (FM)


# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO PARTIALLY DISMISS THE COMPLAINT

Larry Cary (LC 3352)
Rachel Paster (RP 1216)
Attorneys for Defendants
New York Metro Area Postal Union
and Clarice Torrence
1350 Broadway, Suite 815
New York, NY 10018
Tel.: (212) 868-6300
Fax: (212) 868-6302

*Corrected Version*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS .........................................................................1
    The Parties .....................................................................................1
    Summary of the Action ......................................................................2
    Plaintiffs' First Request for Documents ...................................................2
    The Union's Response ........................................................................4
    Plaintiffs' Second Request for Documents .................................................5
    The Allegations of the Complaint ..........................................................6

ARGUMENT .......................................................................................8

### POINT I
PLAINTIFFS' COMPLAINT FAILS IN PART TO STATE A CLAIM
UPON WHICH RELIEF MAY BE GRANTED ...............................................8

  A.  Standard for Dismissal of Claim .......................................................8

  B.  Plaintiffs' Complaint Does Not Provide a Just-Cause
     Basis for Their Requests for Documents .............................................8
    1.  Plaintiffs Are Not Entitled to Records Not
       Relevant to the 2006-2007 LM-2 ..................................................11
    2.  Plaintiffs Are Not Entitled to Certain Records
       Sought for the 2006-2007 Period ..................................................12
       (a) Regarding the Demand to see the Vouchers for Damon Branch,
       Theodore Nicholas, Tawanda Young, Joann Flagler and Giselle
       Ambursley......................................................................12
       (b) Regarding Review of the Schoichet Records................................14
       (c) No Just Cause to Review Legal Bills ......................................14
       (d) Regarding the Review of Vendor Records...................................14
       (e) No Just Cause to Review Records of Contributions, Gifts and Grants...........15
       (f) Regarding the Request to See All of Union's Financial Records..................15

### POINT II
THE DEMAND FOR A JURY TRIAL SHOULD BE STRUCK .........................16

### POINT III
THE DEMAND FOR A REMEDY REQUIRING THE UNION TO PAY
FOR THE COPYING OF RECORDS SHOULD BE STRUCK...........................18

### POINT IV
THE DEMAND FOR ATTORNEY'S FEES
SHOULD BE PARTIALLY DISMISSED....................................................19

CONCLUSION ...................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bolt Electric v. City of New York*, 53 F.3d 465 (2d Cir. 1995)............................................1

*Brennan v. International Brotherhood of Teamsters*, 156 L.R.R.M. 2099, 1997 U.S. Dist. LEXIS 11816 (D.D.C. 1997) .................................................10, 14

*Campbell v. Local 234, Transport Workers Union of America*, 151 L.R.R.M. 2837, 1996 U.S. Dist. LEXIS 3422 (E.D.Pa. 1996) ....................................................18

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ..........................................1

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................................8

*Conley v. United Steelworkers of America*, 549 F.2d 1122 (7th Cir. 1977) ...............10, 18

*Cook v. Teamsters Local 705*, 1997 U.S. Dist. LEXIS 11482 (N.D. Ill. July 24, 1997) ...........................................................................................................................18

*Ellis v. Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO et al.*, 151 L.R.R.M. 2517, 1995 U.S. Dist. LEXIS 19673 (N.D.N.Y. 1995) ..........................................................................................................................8, 10

*Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278 (5th Cir. 1993) .................10

*Flaherty v. Warehousemen, Garage and Service Station Employees Local 334*, 574 F.2d 484 (9th Cir. 1978) .....................................................................................12

*Fruit and Vegetable Packers and Warehousemen v. Morley*, 378 F.2d 738 (9th Cir. 1967) .....................................................................................................................9

*Gabauer v. Woodcock*, 594 F.2d 662 (8th Cir. 1979) .......................................................18

*International Audiotext Network, Inc. v. American Telephone and Telegraph Co.*, 62 F.3d 69 (2d Cir. 1995).............................................................................................1

*Johnson v. Local 1199*, 121 L.R.R.M. 2889, 1986 U.S. Dist. LEXIS 29790 (S.D.N.Y. 1986) ...................................................................................................10, 15

*Krokosky v. United Staff Union*, 291 F. Supp. 2d 835 (W.D. Wis. 2003) ........................14

*Mallick v. International Brotherhood of Electrical Workers*, 749 F.2d 771 (D.C. Cir. 1984) .................................................................................................................14

*Spinowitz v. Herrity*, 672 F. Supp. 670 (E.D.N.Y. 1987) ............................................10, 12

*Stomper v. Local 421, Amalgamated Transit Union*, 1992 U.S. Dist. LEXIS
    19212 (N.D. Ill. 1992).................................................................................................17

*Thompson v. Union of Flight Attendants*, 109 L.R.R.M. 2870, 1982 U.S. Dist.
    LEXIS 11552 (C. D. Cal. 1982) ................................................................................12

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).....................................................8

*Wooddell v. International Brotherhood of Electrical Workers, Local 71*, 502 U.S.
    93 (1991).............................................................................................................16, 17

## FEDERAL STATUTES

29 C.F.R. §403.8(d) ...........................................................................................................9

29 U.S.C. §428 .................................................................................................................16

29 U.S.C. §431(c) ...................................................................................................... *passim*

## PRELIMINARY STATEMENT

Defendants New York Metro Area Postal Union, American Postal Union, AFL-CIO[1] (the "Union") and Clarice Torrence ("Torrence" and collectively "Defendants") respectfully submit this memorandum of law in support of their motion to partially dismiss the Complaint for having failed to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

The facts herein are taken from the Complaint, and, for purposes of this motion to dismiss only, defendants will accept the facts as pleaded therein. *See Bolt Elec. v. City of New York*, 53 F.3d 465 (2d Cir. 1995) (for purposes of motion to dismiss under Rule 12(b)(6), the court treats allegations of complaint as true). In addition, certain facts are drawn from the documents annexed to the accompanying affidavit of Larry Cary, filed herewith ("Cary Aff."). The Court may consider these documents in the instant motion because they were either referenced in the Complaint or were relied upon by the plaintiffs in drafting some of the allegations in the Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002); *International Audiotext Network, Inc. v. American Telephone and Telegraph Co.*, 62 F.3d 69 (2d Cir. 1995).

The Parties

Plaintiffs Charles R. Bembry ("Bembry") and Michael Poole ("Poole") (collectively, "Plaintiffs") are members of the Union. They are also elected officers of the Union. Bembry is the Union's Executive Secretary and Poole is the Union's

---

[1] Plaintiffs' Complaint misstates the name of New York Metro Area Postal Union's parent union. The New York Metro Area Postal Union is a branch of the American Postal Workers Union, AFL-CIO, not the American Postal Union.

Coordinating Vice President.   Defendant Torrence is the Union's President.   *See* Complaint ¶¶ 10, 11, 14.

Summary of the Action

In general terms, the plaintiffs allege they wish "to examine relevant books, records, and accounts necessary to verify the Union's last LM-2 Report" which is an annual financial report filed with the United States Department of Labor. *See* Complaint ¶7. The latest Report, according to the Complaint, covers the Union's fiscal year, April 1, 2006 through March 31, 2007 (the "2006-2007 LM-2 Report"). Complaint ¶16. A copy of the 2006-2007 LM-2 Report is attached to the Cary Affidavit as Exhibit A. Although the Complaint references a need to "verify information" in the 2006-2007 LM-2 Report, before commencing their action the plaintiffs asked the Union to release a voluminous amount of materials, many of which either pre-date or post-date the 2006-2007 LM-2 Report at issue. *See* Complaint ¶¶ 17, 19. Similarly, by their Complaint the plaintiffs demand to inspect financial records and other documents that are not relevant to the information contained in the 2006-2007 LM-2 Report, the sole LM-2 Report mentioned in the Complaint. *See* Complaint ¶¶17, 19, 21-37.

Plaintiffs' First Request for Documents

In their first letter, dated August 21, 2007, plaintiffs asked the Union to allow them to inspect financial records covering more than a four-year period of time. Complaint ¶17; Cary Aff., Exh. B.   Specifically, the plaintiffs asked for the payroll vouchers from June 2003 through July 27, 2007 for a dozen people paid by the Union. They also wanted "[a] break down, with explanations, of all legal fees paid to Cary Kane,

11679-1                                    2

LLC from January 2006, to, and including, August 1, 2007." Complaint ¶17, Cary Aff., Exh. B.

Plaintiffs also demanded access "[f]rom 2003 until the present, [to] a complete and detailed accounting of all monies received and spent relevant to the cell phone tower located" atop the Union's headquarters. Plaintiffs also wanted to inspect "all detailed information concerning rent received from each [commercial] tenant and all other financial reports concerning the operation of Floors 1 – 8 for the Local 10 Building Corporation," which corporation owns and operates the building in which the Union is headquartered. Plaintiffs also wanted to see "[a]ll minutes for all meetings of the Local 10 Building Corporation['s] Board of Directors since May 2003." *See* Cary Aff., Exh. B.

Some parts of plaintiffs' first letter to the Union did not specify any time frame for the records sought. For instance, plaintiffs asked for a copy of "the most recent Trustee Board Report with the names of the Trustees attending." Cary Aff., Exh. B.

In some instances plaintiff's first letter appears directed at understanding the nature of the services performed rather than asking for information to verify the accuracy of the monies spent. Plaintiffs' letter demands "[a] detailed record of services rendered, with monies spent, for Gary Schoichet, a consultant listed for the Union Mail," which is the Union's newsletter to the membership. Plaintiffs also wanted to see records showing "[w]hat services" were being "perform[ed] for the union" by six vendors, including the union's accountants. In addition, plaintiffs' first letter said they wanted a "break-down of all contributions, gifts, and grants totaling $28,139.00 as indicated on the most recent LM-2." Cary Aff., Exh. B.

Plaintiffs did not mention any particular LM-2 in their first letter to the Union, nor did they explain that they wanted to inspect records to verify information on an LM-2 Report. Instead, Plaintiffs wrote that they had a right to inspect the Union's records anytime they wanted to: "President Torrence, we are sure you will concur that for the well running of any labor organization, any officer and/or member has the right to review that labor organization's financial records at any time." Cary Aff., Exh. B.[2]

<u>The Union's Response</u>

The Union quickly wrote to plaintiffs to deny the request, *see* Complaint ¶18, and to point out that the plaintiffs' letter failed to give any reason justifying their request to inspect such a voluminous amount of materials. *See* Cary Aff., Exh. C. On August 24, 2007, Torrence wrote

> Regarding your letter of August 21, 2007, please be advised that after careful consideration of your request I must deny it. You have asked the Union to produce an unprecedented amount of its books and records for a four year period without advancing any particular reason for why it is necessary as a union member for the Union to be put to the extraordinary expense of assembling such materials for your review.
>
> As each of you occupies a union position, you are of course familiar with the rights and responsibilities each of you have under the local's constitution. After reviewing the local's constitution, I can find no special privilege granted you by dint of your position requiring that the local comply with your request.
>
> Because Union[]s are membership organizations, federal law specifies the obligations of the union to file financial reports and it details when unions, if ever, must produce books and records of the description contained in your request to individual members. Moreover, the Department

_____

[2] As set forth in their letters, plaintiffs refer to, *inter alia,* the Union Constitution as the basis for their right to review the records sought. However, the Constitution vests only the Board of Trustees with authority to review the Union's financial records and transactions. *See* Cary Aff., Exh. F, Article 8, p. 9.

> of Labor is authorized and responsible for overseeing the conduct of a union's financial affairs.
>
> I believe the Union is fully compliant with its responsibilities under the law.

Cary Aff., Exh. C.

### Plaintiffs' Second Request for Documents

About two months later, the plaintiffs sent a second request to inspect records. This letter, dated November 9, 2007, also included requests to inspect financial records that are not relevant to the 2006-2007 LM-2 filed by the Union, because certain of the items sought either pre-dated or post-dated the fiscal year covered by the Report. *See* Complaint ¶19; Cary Aff., Exh. D. The November 9 letter demanded that the Union provide 19 months of vouchers, "beginning January 2006 to, and including, July 27, 2007" for 7 of the 12 people named in the first letter, as well as for new people of an unspecified number described as "Union Coordinators and Sergeants at Arms." Complaint ¶19; Cary Aff., Exh. D.

In addition to asking for vouchers for all Union Coordinators and Sergeants-At-Arms, the plaintiffs' November 9 letter also asked for records regarding attendance at the APWU All-Craft Conference, held in November 2007, several months after the 2006-2007 LM-2 Report was filed. Plaintiffs asked to see a list of attendees, the per diem and substitution pay paid to each, and the date the attendees' names were approved by the Executive Board to attend the conference. Complaint, ¶19; Cary Aff., Exh. D. Plaintiffs also repeated their request for access to information about the cell phone tower and the Building Corporation. Cary Aff., Exh. D.

In all other respects, Plaintiffs merely repeated what they had previously requested in their first letter. *See* Cary Aff., Exh. D. Plaintiffs again offered no explanation or justification for seeking access to the information, other than to baldly assert they have a right to inspect the Union's records at any time. Cary Aff., Exh. D.[3]

<u>The Allegations of the Complaint</u>

In the Complaint, plaintiffs recount their two previous letters requesting inspection of the Union's records, though they fail to set forth in detail all of the records sought. *See* Complaint ¶¶17, 19. The plaintiffs do, however, for the first time make various assertions to justify access to particular records. With regard to their request to see payroll vouchers, the plaintiffs make various assertions regarding Damon Branch (a Union Coordinator), Theodore Nicholas (a Union Coordinator), Tawanda Young (the Union's Director of Human Relations), Joann Flagler (the Union's Director of the Clerk Craft), and Giselle Ambursley (the Union's Trustee Board Chairperson), including the assertion that Branch, Nicholas, Young and Flagler were paid more than the salary specified in the Union's Constitution. *See* Complaint ¶¶ 21-25. While the Union's Constitution does specify a salary for certain office holders, the Constitution also provides that in addition to the stated salary the office holder shall receive "substitution for lost postal pay and/or equivalent reimbursement for authorized time spent on union business during non-work hours." *See* Cary Aff., Exh. F (Union Constitution), Article 7, Section 12, p. 6 and Article 9, Sections 5 and 6, page 10.

---

[3] Plaintiffs' Complaint asserts that plaintiffs received no response from Torrence to the November 9 letter. Indeed, Bembry did not receive it, because he failed to pick up Torrence's November 13 letter from the post office. *See* Cary Aff. Exh. E.

Regarding the information sought about Gary Schoichet, the Union Newspaper consultant, the Complaint asserts that plaintiffs need the information "to better understand what he contributes to the newspaper and the basis on which he is paid since Schoichet has been paid more than the previous newspaper consultants." Complaint ¶ 26.

Plaintiffs assert with respect to obtaining a "breakdown of all contributions, gifts and grants totaling $28,139" in the 2006-2007 LM-2 that access is needed "to ascertain the nature of these expenditures; who received these moneys and whether it was reported to the Executive Board and membership." Complaint ¶27.

With regard to various vendors, the Complaint asserts that "neither plaintiffs, the Executive Board nor the membership have any knowledge of the services" provided by such vendors to the Union as justification for seeking access to these records. Complaint ¶¶ 28-33.

Plaintiffs also make a number of assertions in the Complaint regarding the cell phone tower and the Building Corporation which are evidently designed to provide justification for seeking access to the records at issue. Complaint ¶¶34-39.

While not set forth in the letters previously sent, plaintiffs – for the first time – are now demanding access to *all* of the Union's financial records. In Paragraphs 40 to 43 of the Complaint, plaintiffs request access to all of the records "in the possession of Lidiann Rodriguez," the Union's sole bookkeeper. As justification for their entitlement to see all of the Union's financial records, the plaintiffs assert that Rodriguez never worked for the Postal Service before working for the Union, that she has received salary increases from the Union over a five-year period that doubled her salary, that in March or April of 2007 she worked "hand-in-hand with Torrence regarding certain financial reports" and that at

some unspecified date, when the Department of Labor was investigating a complaint about the last Union officers' election, and Bembry asked her "what was going on, she looked frightened and replied, 'Charles, if I tell you anything and it gets back to Clarice [Torrence], she'll fire me.'" *See* Complaint ¶¶40-43. Plaintiffs' Complaint does not identify any other basis for this blanket request for financial records. *See id.*

## ARGUMENT

### POINT I.

### PLAINTIFF'S COMPLAINT FAILS IN PART TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

#### A.    Standard for Dismissal of Claim

"In evaluating a motion to dismiss for failure to state a claim, the Court must 'accept as true all factual allegations in the complaint,' and draw all reasonable inferences in favor of plaintiff, *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992). Accordingly, dismissal is ... proper [where] '... it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Ellis v. Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO et al.*, 151 L.R.R.M. 2517, 1995 U.S. Dist. LEXIS 19673 at *4; (N.D.N.Y. 1995).

#### B.    Plaintiffs' Complaint Does Not Provide a Just-Cause Basis For Their Requests for Documents

Relevant to the instant matter, Section 201(b) the Labor Management Reporting and Disclosure Act ("LMRDA" or the "Act"), 29 U.S.C. §431(b), requires covered unions to file an annual financial report (the "LM-2") with the U.S. Department of Labor. The Act also requires that unions permit their members to see the financial records

needed to verify the accuracy of the financial information contained in the LM-2,

provided the member has "just cause" for doing so.  The statute provides:

> Every labor organization required to submit a report under this title shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records and accounts necessary to verify such report.  The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. §431(c).  *See also* 29 C.F.R. §403.8(d), which provides that, generally

speaking, a union member has the burden of establishing "just cause." [4]

The "just cause" requirement arises out of Congress' concern that unions could be

subject to harassment if unfettered access to union records was available.  As explained

by the Ninth Circuit in *Fruit and Vegetable Packers and Warehousemen v. Morley,* 378

F.2d 738 (9th Cir. 1967):

> When [the LMRDA] was on the floor of the Senate, Senator Goldwater offered an amendment which would give members the unqualified right to examine union records.  Senator Kennedy, fearing that an unqualified right of inspection would lead to harassment, objected to the amendment.  As a compromise Senator Goldwater amended his amendment to provide for inspection for "proper cause" and, as amended, the amendment was adopted.  Although this language was omitted in favor of the House version of "just cause", it seems clear that Congress designed the just cause requirement to prevent undue harassment.

*Morley,* 278 F.2d at 742-43.  Senator Javits further elaborated: "I believe the amendment

is acceptable because it would prevent vexatious forays into the Union's books."

---

[4] Plaintiffs concede in the Complaint that they must establish "just cause" to be entitled to inspect the Union's documents.  Complaint ¶¶ 6 and 48.

Congressional Record 6522-23, Senate, April 23, 1959, *cited in Conley v. United Steelworkers of America*, 549 F.2d 1122, 1124 (7th Cir. 1977) (protection of unions from harassment comes from predicating right to examine books on showing of just cause); *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 285 fn. 10 (5th Cir. 1993) (just cause rule strikes balance between union member's need to know and the union's need to protect itself from harassment).

While the "just cause" requirement is not particularly burdensome, a member must nonetheless show more than "idle curiosity". *See Brennan v. Int'l Bhd. of Teamsters*, 156 L.R.R.M. 2099, 1997 U.S. Dist. LEXIS 11816 at *4 (D.D.C. 1997). Instead, a member must show "the existence of data on the LM-2, or obtained from other sources, that would put a reasonable union member to further inquiry." *Ellis*, 1995 U.S. Dist. LEXIS at *6 (citing *Spinowitz v. Herrity*, 672 F.Supp. 670, 672 (E.D.N.Y. 1987)). Such data, however, may not be based on mere speculation or conjecture, because "the clear import of the statute is that some objective evidence of impropriety must be produced." *See id.*

In addition to establishing "just cause" the records sought must be relevant to verification of the accuracy of the LM-2.

> [T]he information requested for examination must be relevant to the verification of the questionable LM-2 data. The union member must state "what he wishes to verify in the LM-2 Reports and how the particular union records he is requesting are expected to assist him in doing so …." *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278 (5th Cir. 1993). The right to inspect does not extend to "wholesale random audits" of a union's financial record. *Johnson v. Local 1199*, 121 L.R.R.M. 2889 (S.D.N.Y. 1986).

*Ellis*, 1995 U.S. Dist. LEXIS 19673 at *11.

In the instant matter, with the exception of the request concerning charitable contributions, *see* Complaint ¶27, plaintiffs make no effort to identify with any particularity the information they seek to verify on the 2006-2007 LM-2 mentioned in the Complaint.    This failure alone calls into question the entire basis of plaintiff's Complaint. But, in any event, it is clear that to the extent plaintiffs seek access to records that either pre-date or post-date the year making up the 2006-2007 LM-2 Report, such records are not sought pursuant to 29 U.S.C. §431(c) and the Complaint should be dismissed as to all such records.    And many of their other requests are simply not supported by anything to show they have just cause under the law.

             1.  Plaintiffs Are Not Entitled to Records Not
                  Relevant to the 2006-2007 LM-2

As noted above, the Union's LM-2 provides information based upon a fiscal year, April 1 – March 31. Plaintiffs have set forth no set of facts, and can prove no set of facts, that show that in order to establish the accuracy of the April 1, 2006 – March 31, 2007 LM-2 they need access to the payroll vouchers they requested in their first letter, which is referred to in Paragraph 17 of the Complaint, for the period of time running from June 2003 to March 31, 2006.  Previous years' payroll records would serve no purpose for verifying the 2006-2007 LM-2, which is the sole LM-2 referenced in the complaint. Similarly, to the extent plaintiffs seek an order requiring access to the vouchers that came into existence after the time period covered by the LM-2 Report – *e.g.*, from April 1, 2007 to and including July 27, 2007, their Complaint must be dismissed.   While the plaintiffs shortened the time frame of their request for these records to only 19 months in their second request to inspect records, to the extent the time frame of this request is still outside the 12 months covered by the 2006-2007 LM-2, the Complaint should be

dismissed. *See Flaherty v. Warehousemen, Garage and Service Station Employees Local 334*, 574 F.2d 484, 486 (9th Cir. 1978) (where reason for examining records was not related to LM-2 reports, no right to review records); *see also Thompson v. Union of Flight Attendants*, 109 L.R.R.M. 2870, 1982 U.S. Dist. LEXIS 11552 (C. D. Cal. 1982) (same).

The Complaint should also be dismissed on this basis to the extent it seeks an order compelling inspection of the records outside the 2006-2007 fiscal year with respect to the legal fees of Cary Kane LLC [*sic*], the cell phone tower, and the Local 10 Building Corporation. For the same reason, the Complaint also should be dismissed with regard to plaintiff's request to inspect records relating to the November 5 – 8, 2007 APWU All-Craft Conference, especially in light of the fact that the LM-2 report covering those expenditures is not due to be filed until June of 2008. *See Spinowitz*, 672 F. Supp at 674 (documents for an LM-2 yet to be filed and not yet due not subject to inspection).

2. Plaintiffs Are Not Entitled to Certain Records
   Sought for the 2006-2007 Period

Even with regard to records potentially relevant to the 2006-2007 LM-2, plaintiffs' Complaint fails to state a claim for many if not most of the records sought. In many instances plaintiffs fail to offer any explanation at all to justify inspection of the records under the standards imposed by the law.

(a) Regarding the Demand to see the Vouchers for Damon Branch, Theodore Nicholas, Tawanda Young, Joann Flagler and Giselle Ambursley

While the complaint asserts that Damon Branch, Theodore Nicholas, Tawanda Young, Joann Flagler and Giselle Ambursley earned more than what is provided for in the Union's Constitution, *see* Complaint ¶¶21-25, the Constitution explicitly provides

12

that they will receive, in addition to the stated salary "substitution [pay] for lost postal pay and/or equivalent reimbursement for authorized time spend on union business." *See* Cary Aff., Exh. F, Article 7, Section 12, p. 6 and Article 9, Sections 5 and 6, p. 10. Moreover, according to the 2006-2007 LM-2 Report, both Bembry and Poole earned substantially more than what is stated for their positions in the Constitution. The 2006-2007 LM-2 Report shows Bembry was paid $78,127 in his position as Executive Secretary, while the salary set forth in the Union Constitution is only $31,032.97. *See* Cary Aff., Exh. A at p. 13; Exh. F., Article 7, Section 5, p. 4. The LM-2 shows Poole was paid $9,162 as the Coordinating Vice President, while the salary set forth in the Union Constitution is only $5,100. *See* Cary Aff., Exh. A, p. 15; Exh. F, Article 7, Section 8, p. 5.

To the extent that plaintiffs rely on the disparity between what is stated in the Union's Constitution and what is shown on the 2006-2007 LM-2 for the proposition that just cause exists to require inspection of the records, they have failed to state a claim for which relief can be granted. Plaintiffs do not rely on some objective facts that have put them on notice of inquiry when they themselves know that the salary stated in the constitution is not what officers receive. Plaintiffs make no showing that they have been put "reasonab[ly] . . . to further inquiry" concerning the salary paid to these officers and these claims should be dismissed. With respect to the other allegations set forth in the paragraphs dealing with what these individuals received, none of those allegations goes to the issue of explaining why there is a need to check these records to establish whether the 2006-2007 LM-2 reported amounts are accurate or not. Instead they appear to be based on an acceptance that the LM-2 reported income is accurate and that the real

dispute is the plaintiffs' view that the officers in question should not have received such pay because it was improper to assign these individuals the duties they performed.

(b)  Regarding Review of the Schoichet Records

Other than simply asserting in the Complaint that the Union has paid Gary Schoichet, a consultant for the Union's newsletter, more than was paid to the previous consultant, plaintiffs provide no basis for getting access to the records sought.  Compare *Krokosky v. United Staff Union*, 291 F. Supp. 2d 835, 840-43 (W.D. Wis. 2003) (change in expenditure that was merely "normal fluctuation" did not rise to the level of just cause) with *Mallick v. International Brotherhood of Electrical Workers*, 749 F.2d 771, 775 (D.C. Cir. 1984) (decrease in union's legal fund of $400,000 sufficient just cause to warrant access to records).

(c)  No Just Cause to Review Legal Bills

Plaintiffs' letters and Complaint are devoid of any objective facts showing they have any articulable reason to believe that the LM-2 is inaccurate with regard to the fees paid the law firm of Cary Kane LLP.  Plaintiffs offer no just cause for obtaining access to the attorneys' billings, and this request should be dismissed.  *See generally Brennan*, 156 L.R.R.M. 3099, 1997 U.S. Dist. LEXIS 11816 at *10-16 (no right to billing records of union's attorneys).

(d)  Regarding the Review of Vendor Records.

Plaintiffs' letters and Complaint are similarly devoid of any objective facts showing they have any articulable reason to believe that the LM-2 is inaccurate regarding the fees paid to the Union's accountants or the other vendors.  Plaintiffs' only assertion offered to justify access to the records for the vendors is that Plaintiffs do not know what

11679-1                                    14

they do.[5]  Plaintiffs do not explain how satisfying their curiosity as to what each vendor does relates to verification of the accuracy of the amount shown on the LM-2s.  Plaintiffs provide no objective evidence of any impropriety, or any reason to doubt the accuracy of the LM-2s, and for this reason alone their claims should be dismissed.

(e)  No Just Cause to Review Records of Contributions, Gifts, and Grants.

The same can be said with regard to the plaintiffs' request for a breakdown of the contributions, gifts and grants listed in the 2006-2007 LM-2.  Absent any effort being made by the plaintiffs to show just cause, this Court may easily conclude that plaintiffs are merely trying to conduct a "wholesale random audit" of these aspects of the LM-2 and dismiss the relevant portions of their Complaint.[6]  It is just this kind of broad - and baseless – request that the statutory "just cause" requirement is designed to avoid.  *See Johnson*, 121 L.R.R.M. 2889, 1986 U.S. Dist. LEXIS 29790 at *7.

(f)  Regarding the Request to See All of Union's Financial Records.

Plaintiffs' request, made here for the first time, to see all of the Union's financial records should be dismissed as well.  None of the facts asserted by plaintiffs in the Complaint establishes just cause for permitting what would be a random audit of the Union's finances.  To justify access to all of the records in the possession of the Union's sole bookkeeper, *i.e.*, every financial record, plaintiffs assert that the bookkeeper was never an employee of the Postal Service before going to work for the Union and that her

---

[5] While Plaintiffs also assert that the Union's Executive Board and membership do not know what these vendors do, this assertion is no more than unsubstantiated hearsay, which even if true does not establish some objective evidence of an impropriety warranting release of the information. *See Spinowitz*, 672 F. Supp. at 672.  Moreover, this assertion raises the issue of whether plaintiffs have even reviewed the Union's 2006-2007 LM-2 before making their blanket request for records to verify its contents, as the LM-2 identifies the type of services provided by each such vendor. *See* Cary Aff., Exh. A, pp. 28-31.

[6] And, as with the vendors concerning whom plaintiffs demanded records, so too are these contributions broken down in the 2006-2007 LM-2. *See* Cary Aff., Exh. A, pp. 13-23, 26.

wages were doubled over a five year period. This supplies no basis under the law for gaining access to the Union's financial records. Similarly, the assertion that the bookkeeper would not explain to Bembry, on some unspecified date, her activities concerning a Department of Labor investigation of an internal Union election does not provide the objective facts needed to show that Bembry has just cause to question the accuracy of any aspect of the LM-2 cited in the Complaint. A Department of Labor investigation of a union election focuses on the mechanics of the election and whether it was conducted lawfully and fairly, *see* 29 U.S.C. §428; it does not focus on the financial recordkeeping, or the substance of such records, of a union.

While the Union believes that plaintiffs will not be able to show that they have just cause to inspect any of the documents at issue in this case, with regard to the allegations seeking access to the records of the Building Corporation and the cell phone tower, for the period of time covered by the 2006-2007 LM-2 only, the instant motion does not seek dismissal of the Complaint. The Union believes discovery is needed in order to properly make a motion for summary judgment on these remaining issues.

## POINT II

### THE DEMAND FOR A JURY TRIAL SHOULD BE STRUCK

Plaintiffs' Complaint demands a jury trial. Because of the nature of this action and the relief requested, plaintiffs do not have a right to a jury and the demand should be struck from the complaint. In *Wooddell v. International Brotherhood of Electrical Workers, Local 71*, 502 U.S. 93 (1991), an action for money damages under Title I of the LMRDA, the Supreme Court articulated the standard for determining when a jury trial is available:

> To determine whether a particular action will resolve legal rights, and therefore give rise to a jury trial right, we examine both the nature of the issues involved and the remedy sought. "First we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.'" The second inquiry is the more important in our analysis.

*Wooddell,* 502 U.S. at 97 (citations omitted). The Court held in *Wooddell* that the particular plaintiff in the case had a right to a jury trial because the action under the LMRDA was for money damages, which the court described as "the traditional form of relief offered in the courts of law." *Id.* By contrast, in the instant action plaintiffs seek an injunction requiring the Union to grant them the right to inspect the Union's financial records. This is the traditional form or relief offered by courts of equity.

While the plaintiffs' Complaint does request attorney's fees, plaintiffs do not allege any other monetary damages. *See* Complaint ¶44. The request for attorney's fees does not convert this action to one where a jury trial is available because the statute clearly vests the Court, and only the Court, with the discretion and authority to award attorney's fees. 29 U.S.C. §431(c);[7] *see, e.g., Stomper v. Local 421, Amalgamated Transit Union,* 1992 U.S. Dist. LEXIS 19212 (N.D. Ill. 1992) (no right to jury trial in claim under 29 U.S.C. §431(c)).

---

[7] While the statute permits a Court to award attorney's fees in certain instances, plaintiffs' request should be denied in this case. Plaintiffs seek fees for litigating the Union's denial of plaintiffs' requests for documents despite the fact that (1) the Union had asked for an explanation to justify the extraordinary request and received no response from plaintiffs and (2) most of the documents plaintiffs sought are either outside of what the law requires a union to produce or outside the time frame justifiable under the law.

## POINT III

## THE DEMAND FOR A REMEDY REQUIRING THE UNION TO PAY FOR THE COPYING OF RECORDS SHOULD BE STRUCK

In the Complaint, plaintiffs ask the Court to order the Union to provide plaintiffs, at the Union's expense, with copies of the records plaintiffs seek. This is an extraordinary remedy, not provided for under the statute, and it should not be granted.

Section 201(c) of the LMRDA provides that unions must make available the information contained in the LM-2 Report. *See* 29 U.S.C. §431(c). This means that either the union must publish a financial report containing the information set forth in the LM-2, or the union must provide the membership with a copy of the LM-2.[8] The statute also provides that unions grant members the right "for just cause to examine any books, records, and accounts necessary to verify such report." *Id.* The statute does not impose on a union the obligation to provide copies of its financial records to the membership at the Union's expense.

Where members have alleged they had insufficient time to examine the records, courts have ordered that additional time be made available to further inspect the records, *see, e.g., Cook v. Teamsters Local 705*, 1997 U.S. Dist. LEXIS 11482 (N.D. Ill. July 24, 1997), or in an appropriate case, to copy the union's records, but not at the union's expense. *See, e.g., Gabauer v. Woodcock*, 594 F.2d 662, 664, 666 (8th Cir. 1979) (holding that the right to examine records includes the right to make copies); *Conley*, 549 F.2d 1122 (holding that right to inspect includes right to copy); *Campbell v. Local 234,*

---

[8] Many LM-2's, including the Union's 2006-2007 LM-2 in question herein, are now available on the U.S. Department of Labor's website, at http://erds.dol-esa.gov. Plaintiffs herein do not claim that they have not had the opportunity to review the 2006-2007 LM-2.

*Transp. Workers Union of Am.*, 1996 U.S. Dist. LEXIS 3422, *17-18, 151 L.R.R.M. 2837 (E.D.Pa. 1996) (same).  However, the statute does not contemplate that the Union bear the expense of copying records for the plaintiffs, and plaintiffs' Complaint points to no legal basis for this demand.  Accordingly, plaintiffs' request for copying costs should be dismissed.

**POINT IV**

**THE DEMAND FOR ATTORNEY'S FEES**
**SHOULD BE PARTIALLY DISMISSED**

While the statute permits the Court to exercise its discretion to determine whether to award attorney's fees in the event that plaintiffs prevail in the instant action, under the facts of this case it is respectfully urged that no such fees should be awarded to plaintiffs for the fees they have incurred prior to the Court's action on this motion to dismiss.

This is not a case where the Union ignored a request for records.  Instead, the Union quickly responded by asking the plaintiffs to explain why they thought they were entitled to see a large, multi-year amount of material.  All plaintiffs offered in their letters by way of explanation or justification was the statement that they had the right to examine union records any time they wanted to, which is clearly not the standard set forth in the statute.

Now that plaintiffs have filed their Complaint, it is clear that the bulk of the records requested in the first letter, and many significant portions of the records requested in the second letter, relate to a time period not relevant to their right to inspect documents.  In addition, in many instances discussed above, the Complaint offers nothing to establish that plaintiffs have just cause to inspect records that otherwise would be relevant to verification of the 2006-2007 LM-2.  Moreover, plaintiffs' Complaint has

indeed now broadened plaintiffs' prior requests for records, to encompass all of the Union's financial records, without offering any basis for meeting their burden of having just cause for such a radical effort.

The Union does not have the burden under the law of sorting through a request, guessing what documents plaintiffs really want, and guessing what reason plaintiffs have for seeking such documents. And, as here, when the Union timely asks for an explanation as to the reason documents are sought, and none is forthcoming from the plaintiffs before plaintiffs file suit, it is respectively suggested that attorney's fees should not be available.

Should the Court grant the relief requested by Points I through III, the case will not be entirely dismissed. At this juncture, it would be only appropriate to dismiss the request for attorney's fees incurred prior to the Court's action on this motion.

## CONCLUSION

For the reasons set forth above, the Union respectfully requests that this Court (1) dismiss plaintiff's Complaint as set forth herein; (2) strike plaintiffs' demand for a jury trial; (3) strike plaintiffs' request that the Union bear the expense of plaintiffs' copying of the Union's records; and (4) deny plaintiffs' request for attorneys' fees at least through such date that the Court rules on the instant motion.

Dated:  April 29, 2008
New York, New York

Respectfully submitted,

CARY KANE LLP

By: _____
Larry Cary (LC 3352)
Rachel Paster (RP 1216)
Attorneys for Defendants New York
Metro Area Postal Union and Clarice
Torrence
1350 Broadway, Suite 815
New York, NY 10018
Tel.: (212) 868-6300
Fax: (212) 868-6302

***Corrected Version***

11679-1                                          21